Kevin M. Cuddy (Bar No. 0810062)
Connor R. Smith (Bar No. 1905046)
STOEL RIVES LLP
510 L Street, Suite 500
Anchorage, AK 99501
Telephone: 907.277.1900
Facsimile: 907.277.1920
kevin.cuddy@stoel.com
connor.smith@stoel.com

Attorneys for Plaintiff

**STOEL RIVES** LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CONOCOPHILLIPS ALASKA, INC., | |
| Plaintiff, | |
| v. | |
| ALASKA OIL AND GAS CONSERVATION COMMISSION, | |
| Defendant. | Case No.: 3:22-cv-00121-HRH |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
## (42 U.S.C. § 6506a; 43 U.S.C. § 1352)

Plaintiff, ConocoPhillips Alaska, Inc. ("CPAI"), by and through its undersigned

counsel, hereby files this Complaint for Declaratory and Injunctive relief against Defendant

Alaska Oil and Gas Conservation Commission ("AOGCC") and alleges as follows:

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH                      1

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

## SUMMARY OF ACTION

1.    CPAI has invested tens of millions of dollars exploring the National Petroleum Reserve in Alaska ("NPR-A"), drilling a series of wells on federal lands pursuant to federal leases under federal law.  CPAI made these investments based on the federal government's express confirmation that the highly valuable data obtained from this exploratory work (the "Well Data") would be held confidentially for the duration of CPAI's leases, thus preventing competitors from taking unfair advantage of CPAI's efforts.  In addition to the federal government's express assurances of confidentiality, CPAI is entitled to confidential treatment of this Well Data pursuant to federal law.  This action seeks to determine the confidential status of this Well Data and enjoin the AOGCC from disclosing that Well Data in violation of federal law.

## PARTIES

2.    CPAI is a Delaware corporation registered to do business in Alaska, and it is in good standing. It is Alaska's largest oil producer and a leader in oil and gas exploration and development in the state for more than 50 years. CPAI is in all ways qualified to bring and maintain this action.

3.    Defendant AOGCC is an independent quasi-judicial agency of the State of Alaska housed within the State of Alaska, Department of Commerce, Community, and Economic Development. It oversees oil and gas drilling, development and production, reservoir depletion and metering operations, including for the prevention of waste and

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH                2

conservation of oil and gas, as more particularly described in AS 31.05.030 ("Powers and duties of commission").

## JURISDICTION AND VENUE

4.     This is an action arising under the Naval Petroleum Reserve Production Act of 1976 (42 U.S.C. § 6501, *et seq.*) ("NPRPA") and the doctrine of federal preemption. Pursuant to 28 U.S.C. §§ 2201 and 2202, CPAI seeks a declaratory judgment and a permanent injunction concerning AOGCC's planned release of CPAI's Well Data, which contains proprietary confidential information and valuable trade secrets, in violation of federal law.

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this dispute arises under the NPRPA and the Supremacy Clause of the United States Constitution, Art. VI, cl. 2, and because the claims are based on (a) one or more federal questions; (b) a request for declaratory judgment pursuant to 28 U.S.C. § 2201 in a case of actual controversy; and (c) the federal preemption of state law, including AS 31.05.035(c) and 20 AAC 25.537(d) as applied by AOGCC.

6.     Venue is proper in the District of Alaska under 28 U.S.C. § 1391(b) because AOGCC is located in this District and a substantial part of the events or omissions giving rise to CPAI's claims occurred within this District.

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

7.     This action seeks to prevent AOGCC from violating federal law by disclosing CPAI's proprietary confidential information and valuable trade secrets. The State of Alaska has indicated that AOGCC may disclose this Well Data pursuant to state law (AS 31.05.035(c) and 20 AAC 25.537(d)).  Accordingly, this action seeks a declaration that AS 31.05.035(c) and 20 AAC 25.537(d), as applied, are preempted by federal law where AOGCC seeks to disclose CPAI's information and trade secrets to the public. It seeks to permanently enjoin AOGCC from any future unlawful disclosures.

## FACTUAL ALLEGATIONS

**A.     Exploration of the National Petroleum Reserve in Alaska**

8.     The NPR-A consists of 23.6 million acres on Alaska's North Slope and is the nation's largest single unit of public land.

9.     Established as the Naval Petroleum Reserve in 1923, the NPR-A was renamed and its management authority was transferred to the Secretary of the Interior in 1976 by the Naval Petroleum Reserves Production Act, 42 U.S.C. § 6501 *et seq*. (the "NPRPA").

10.     When Congress first enacted the NPRPA in 1976, only the federal government was permitted to explore for petroleum in the NPR-A.

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH          4

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

11.    Following the 1979 oil crisis, Congress debated the future of the government's inadequate exploration efforts and whether to open the NPR-A to private oil and gas leasing and development.[1]

12.    In December 1980, Congress added a rider (hereafter "Rider" or "Public Law No. 96–514") to the Department of Interior appropriations bill, authorizing an "expeditious program of competitive [private] leasing of oil and gas in the" NPR-A.[2] This Rider was titled "Exploration of National Petroleum Reserve in Alaska."

13.    In addition to appropriating more than $100 million to facilitate this "expeditious program," Public Law No. 96–514 also added language to the NPRPA addressing lessees' confidential exploration data. Rather than reinvent the wheel regarding a statutory and regulatory scheme to protect confidential exploration data, however, Public Law No. 96–514 incorporated the previously developed statutes and regulations found in the Outer Continental Shelf Lands Act ("OCSLA"). Specifically, the Rider added language to the NPRPA providing that any information acquired in exploration of the NPR-A "shall be subject to the conditions of 43 U.S.C. § 1352(a)(1)(A)"[3] (the "Confidential Information Statute").

14.    The Confidential Information Statute is the "Oil and gas information program" under the OCSLA. It provides that any lessee or permittee conducting

---

[1] *See* H.R. Rep. No. 96-1147, at 32–33 (1980).
[2] *See* Pub. L. No. 96–514, 94 Stat. 2964 (1980) (codified at 42 U.S.C. § 6506a).
[3] *See* 42 U.S.C. § 6506a(m).

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH            5

exploration, development, or production of oil and gas shall provide the Secretary access to data and information obtained from such activity, and that such data and information "shall be provided in accordance with regulations which the Secretary shall prescribe."[4]

15.     There are multiple "conditions of 43 U.S.C. § 1352(a)(1)(A)" that apply to the Well Data, including those conditions contained in the other subsections of § 1352 and those found in the regulations promulgated pursuant to the statute. Specifically, 43 U.S.C. § 1352(g) provides that "[a]ny provision of State or local law which provides for public access to any privileged information received or obtained by any person pursuant to this subchapter is expressly preempted by the provisions of this section[.]"[5] The regulations promulgated pursuant to the Confidential Information Statute—found in 30 C.F.R. Part 552—also provide stringent protections for lessees' confidential exploration data.[6] They provide that the lessee's exploration data shall be kept confidential and shall not be provided to any state or the public without the lessee's permission.[7] They also provide that whenever any employee of any state reveals information in violation of the confidentiality protections, the lessee may sue for civil damages in federal court.[8]

---

[4] 43 U.S.C. § 1352(a)(1)(A).
[5] *See* 43 U.S.C. § 1352(g).
[6] *See* 30 C.F.R. § 552.1 ("The purpose of this part is to implement the provisions of section 26 of the Act (43 U.S.C. 1352).").
[7] *See* 30 C.F.R. § 552.6(b).
[8] *See id.* at § 552.7(b)(1); *see also* 43 U.S.C. § 1352(f).

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH          6

**STOEL RIVES** LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

16.     Faced with a critical oil shortage and the federal government's limited exploratory program, Congress opened the NPR-A to private leasing, exploration, and production in order to increase domestic oil supply while simultaneously providing that a lessee's confidential exploration data from exploring in the NPR-A would remain confidential under federal law and the leases.

**B.     CPAI's NPR-A Leases and Wells**

17.     CPAI has acquired and developed significant lease holdings in the northeast portion of the NPR-A.

18.     CPAI has drilled several wells on its leases in the NPR-A, including wells known as Stony Hill 1, Tinmiaq 7, Tinmiaq 8, Tinmiaq 9, and West Willow 1 (collectively the "Wells"). The Wells are located on Bureau of Land Management ("BLM") leases on federal lands in the NPR-A.

19.     CPAI has completed drilling for each of the Wells, and in doing so, it obtained substantial Well Data from its well drilling operations. This Well Data was submitted to BLM as required by 43 C.F.R. § 3152.6, which provides that all information submitted is subject to the confidentiality protections of the Freedom of Information Act.

20.     The total cost of obtaining the Well Data through CPAI's drilling operations was tens of millions of dollars.

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH          7

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

21.     Pursuant to the express terms of the leases between CPAI and BLM, all data derived from exploration activity was to be withheld by BLM from public disclosure during the "existence of [the] lease."

22.     CPAI relies upon assurances of confidentiality for its Well Data when it makes sizable exploratory investments of the type described above.

23.     CPAI has never publicly disclosed the Well Data, which are proprietary and contain trade secrets. BLM continues to hold the Well Data confidential under the federal oil and gas lease terms, BLM regulations, and other applicable federal law.

24.     The Well Data has substantial economic value to CPAI. The Well Data provides CPAI critical information for the evaluation of land surrounding the Wells. The Well Data is also valuable property that, due to its confidential status, could be licensed to other explorers or lessees.

25.     As long as its confidentiality is maintained, CPAI's Well Data provides it with a significant competitive advantage with respect to its competitors. The Well Data will continue to have substantial economic value to CPAI for the indefinite future as long as it remains confidential.

**C.      CPAI's Efforts to Collaborate with AOGCC**

26.     All of the Wells at issue were drilled on federal lands pursuant to the NPRPA and CPAI's federal leases with BLM.  Still, CPAI has diligently worked to collaborate with

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH                     8

state regulatory authorities as AOGCC implements the state regulatory scheme for oil production activities.

27.     To date, and in order to allow the state and federal regulatory schemes to work in concert, CPAI has applied for and received the AOGCC prescribed permits to drill the Wells, made the AOGCC prescribed reports, and submitted the data prescribed by AOGCC. When CPAI submitted its Well Data to AOGCC, CPAI provided transmittal memoranda that included an express statement that the Well Data must be held confidential pursuant to federal law.

### D.     AOGCC's Planned Public Disclosure of CPAI's Well Data

28.     AS 31.05.035(c) directs AOGCC to hold confidential oil and gas well information filed with it for 24 months following the 30-day period after completion of the well.

29.     To date, CPAI's Well Data has been held confidential by AOGCC, but the 24-month period provided by AS 31.05.035(c) has run for each of the Wells.

30.     The state statute provides an avenue for the 24-month confidentiality period to be extended. AS 31.05.035(c) provides in pertinent part:

> If the commissioner of natural resources finds that the required reports and information contain significant information relating to the valuation of unleased land in the same vicinity, the commissioner shall keep the reports and information confidential for a reasonable time after the disposition of all affected unleased land, unless the owner of the well gives written permission to release the reports and information at an earlier date.

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH                    9

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

In order to protect the confidentiality of the Well Data, and in the hopes of avoiding the need to bring this lawsuit, CPAI requested that the Commissioner of the Department of Natural Resources ("DNR") agree to keep the Well Data confidential pursuant to this statute. CPAI made this request despite the fact that DNR's duties are statutorily limited to addressing the administration of a "*state* program for the . . . development of natural resources" – not a program for federal lands.[9] Further, the Alaska Land Act defines "land" to mean land or resources "belonging to or acquired by the state" – not federal lands.[10] The state statute thus does not, and cannot, authorize AOGCC or DNR to disclose the Well Data that was obtained from federal lands and is protected by federal law.

31.    CPAI explained to the DNR Commissioner that extended confidentiality was warranted for several reasons, including but not limited to the fact that federal law required that the information be maintained as confidential.

32.    The DNR Commissioner ultimately denied CPAI's request for extended confidentiality. AOGCC has indicated that, absent judicial action, the Well Data will be disclosed to the public—including CPAI's competitors. To avoid the need for a temporary restraining order and preliminary injunction, AOGCC has agreed to hold the Well Data confidential during the pendency of litigation concerning that confidentiality.

---

[9] AS 44.37.020(a).

[10] *See* AS 38.05.965(24); *see also Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082-83 (Alaska 2011) (noting that the Alaska Land Act "gave DNR the responsibility for managing *state-owned land*" (emphasis added)).

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH                   10

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

33.     If the Well Data is disclosed to the public, not only will federal law be violated, but the Well Data will lose its value to CPAI. CPAI's competitive advantage resulting from its investment in the leases and drilling, for which it took on the risks of failure and paid tens of millions of dollars, will be lost.

## FIRST CAUSE OF ACTION
### (For Declaratory Judgment)

34.     The allegations in paragraphs 1–33 of this complaint are realleged and incorporated by reference.

35.     Title 28 U.S.C. § 2201 provides that in a case of actual controversy within its jurisdiction, any court of the United States "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

36.     Under the Supremacy Clause of the United States Constitution and the doctrine of federal preemption, when a federal statute contains explicit language indicating that contrary state laws or regulations are preempted, those state laws and regulations are expressly preempted.

37.     The federal leases on which CPAI drilled the Wells were issued pursuant to the NPRPA,[11] which subjects all of the information CPAI gathers from its exploration in the NPR-A to the conditions of the Confidential Information Statute.[12] The Confidential

---

[11] *See* 42 U.S.C. § 6506a(m).
[12] *See* 43 U.S.C. § 1352(a)(1)(A).

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH                    11

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

Information Statute gives the federal government access to CPAI's Well Data and further mandates that this data shall be provided to the federal government under regulations prescribed by the Secretary. It directs the Secretary to prescribe regulations to protect the confidentiality of the lessees' and permittees' data.[13]

38.     Title 43 U.S.C. § 1352(a)(1)(A) is the first of several interlocking subsections of the statute that provide the procedures for the provision of a lessee's exploration data to the Secretary and corresponding confidentiality protections for that data. These subsections include subsection (g), entitled "Preemption of State Law by Federal Law," which provides that "[a]ny provision of State or local law which provides for public access to any privileged information received or obtained by any person pursuant to this subchapter *is expressly preempted by the provisions of this section*, to the extent that it applies to such information."[14] Similarly, subsection (f) provides a civil cause of action in federal court against any state that discloses a lessee's data without the lessee's permission.[15] The relevant subsections of 43 U.S.C. § 1352 are among the conditions of the Confidential Information Statute that the Well Data CPAI gathers from its exploration in the NPR-A are subject to.

39.     Under 43 U.S.C. § 1352(a)(1)(A), all relevant data and information shall be provided in accordance with those regulations prescribed by the Secretary, which are

---

[13] *Id.* § 1352(c).
[14] *Id.* § 1352(g) (emphasis added).
[15] *Id.* § 1352(f).

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH            12

contained in 30 C.F.R. Part 552. These regulations contain explicit language providing that a lessee's exploration data will remain confidential absent the lessee's permission for public disclosure.[16] These regulations are conditions of the Confidential Information Statute, and they apply to the Well Data.

40.    Congress incorporated the conditions of the Confidential Information Statute, including the explicit language in the regulations and in 43 U.S.C. § 1352(g), into the NPRPA, making it clear that it wanted to protect the confidentiality of data from lessees exploring in the NPR-A, including by expressly preempting any contrary state laws or regulations.

41.    CPAI's Well Data is protected by the express preemption language among the conditions of the Confidential Information Statute. To the extent state laws or regulations—including AS 31.05.035(c) and 20 AAC 25.537(d), as applied—provide that AOGCC will publicly disclose CPAI's Well Data while that data is protected from disclosure by federal law and by the leases, those laws and regulations are expressly preempted. CPAI is entitled to an order so declaring.

42.    Under the Supremacy Clause of the United States Constitution and the doctrine of federal preemption, when a state law or regulation conflicts with a valid federal law or impermissibly interferes with Congress's important objectives, federal law preempts the state law or regulation.

---

[16] *See* 30 C.F.R. §§ 552.6(b), 552.7(b)(1).

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH          13

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

43.     The policy statement informing the body of federal regulations addressing oil and gas leasing on the NPR-A (43 C.F.R. § 3130, *et seq.*) states:

> The oil and gas leasing program within the [NPR-A] shall be conducted in accordance with the purposes and policy direction provided by the Department of Interior Appropriations Act, Fiscal Year 1981 (Pub. L. 96–514), and the other executive, legislative, judicial and Department of Interior guidance.[17]

44.     The purpose of Public Law No. 96–514 was to create an "expeditious program of competitive [private] leasing of oil and gas in the" NPR-A.[18] Congress sought to incentivize private exploration in the NPR-A by providing private companies with assurances that data would be protected. Congress provided those assurances through 42 U.S.C. § 6506a(m), incorporating by reference the conditions of the Confidential Information Statute, including the body of regulations at 30 C.F.R. Part 552 for protecting the confidentiality of data and the statutory protections in 43 U.S.C. § 1352 discussed above. Congress's purpose is reiterated by the terms of CPAI's federal leases that also protect the confidentiality of its Well Data during the "existence of [the] lease."

45.     In these ways and others, Congress specifically intended to provide explicit protections for lessees' confidential exploration data in the NPR-A. To the extent state laws or regulations—including AS 31.05.035(c) and 20 AAC 25.537(d), as applied—provide that AOGCC will publicly disclose CPAI's Well Data while that data is protected from

---

[17] 43 C.F.R. § 3130.0-2.

[18] *Sovereign Inupiat for a Living Arctic v. Bureau of Land Mgmt.*, 516 F. Supp. 3d 943, 946 (D. Alaska 2021) (quoting Pub. L. No. 96–514).

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH          14

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

disclosure by federal law and by the leases, those laws and regulations conflict with federal law and impermissibly interfere with Congress's important objectives and are thus preempted. CPAI is entitled to an order so declaring.

46.     An actual, present and justiciable controversy has arisen between CPAI and AOGCC concerning CPAI's rights to confidentiality for its Well Data under federal law. CPAI seeks declaratory judgment from this Court that the confidentiality of the Well Data is protected under 43 U.S.C. § 1352 and regulations promulgated thereunder, and that state laws purporting to allow disclosure of the Well Data are preempted by this federal law.

## SECOND CAUSE OF ACTION
### (Request for Permanent Injunction)

47.     The allegations in paragraphs 1–46 of this complaint are realleged and incorporated by reference.

48.     AOGCC's planned disclosure of CPAI's Well Data and its application of state laws and regulations to allow such disclosure are preempted by federal law.

49.     If an injunction is not granted, AOGCC will continue its unlawful attempt to publicly disclose CPAI's Well Data by seeking to enforce state laws and regulations in a manner that is expressly preempted by and conflicts with federal law, and impermissibly interferes with Congress's important objectives.

50.     AOGCC's unlawful actions infringe on CPAI's rights under federal law and the federal leases, and they will deprive CPAI of its confidential proprietary information and valuable trade secrets, resulting in irreparable harm. CPAI will suffer significant

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH                15

economic harm if AOGCC releases its Well Data, given that CPAI has invested tens of millions of dollars to obtain the data and its value will be destroyed by public disclosure. CPAI will also lose its competitive advantage with respect to its competitors if its Well Data is made public.

51.     Neither AOGCC nor the public will suffer any harm if CPAI's Well Data remains confidential. The sole legitimate purpose for which the Well Data may be used by AOGCC is the prevention of waste and conservation of oil and gas. Given that AOGCC can achieve this purpose without publicly disclosing CPAI's Well Data, it does not have any legitimate interest in public disclosure, and the public has no legitimate interest in or entitlement to obtaining CPAI's proprietary information or trade secrets without CPAI's agreement or consent.

52.     Accordingly, the balance of equities favors CPAI. Thus, the Court should enjoin AOGCC from publicly disclosing CPAI's Well Data. The Court should further enjoin and restrain AOGCC, and all authorities acting on its behalf, from any future attempts to disclose the data CPAI obtains from its lease activities in the NPR-A that are protected by federal law and federal leases.

## **PRAYER FOR RELIEF**

**WHEREFORE**, CPAI respectfully requests an Order and Judgment against AOGCC:

A.  Declaring that AS 31.05.035(c) and 20 AAC 25.537(d) are preempted by federal law – under either "express" or "conflict" preemption – insofar as these state laws and regulations could be applied to permit AOGCC to publicly disclose CPAI's Well Data;

B.  Permanently enjoining enforcement of state laws and regulations to the extent inconsistent with the confidentiality requirements of federal law and the federal leases, with respect to CPAI's Well Data and any and all present and future data obtained by CPAI from its exploration activities on federal lands protected by federal law and federal leases;

C.  Awarding CPAI its attorneys' fees, costs and disbursements, plus interest; and

D.  Such other and further relief as the Court deems just and proper.

DATED: May 13, 2022                    STOEL RIVES LLP

                                       By:/s/ Kevin M. Cuddy
                                          Kevin M. Cuddy (Bar No. 0810062)
                                          Connor R. Smith (Bar No. 1905046)

113615959.6 0028116-00162

*ConocoPhillips Alaska, Inc., v. AOGCC*
Case No. 3:22-cv-00121-HRH                    17

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920