TREG R. TAYLOR
ATTORNEY GENERAL

Zjok T. Durst (Alaska Bar No. 1311080)
Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email: zjok.durst@alaska.gov
Attorney for State of Alaska

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| CONOCOPHILLIPS ALASKA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 3:22-cv-00121-SLG |
| | ) | |
| ALASKA OIL AND GAS | ) | |
| CONSERVATION COMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS COMPLAINT PURSUANT TO CIVIL RULE 12(b)(6)

Plaintiff ConocoPhillips Alaska, Inc. ("CPAI") has sued the Alaska Oil and

Gas Conservation Commission ("AOGCC") to prevent AOGCC from making

available to the public information CPAI obtained from its wells on federal land

("well data") that CPAI provided to AOGCC pursuant to Alaska law. AOGCC is

an independent quasi-judicial agency of the State of Alaska that acts to prevent waste, protect correlative rights, improve recovery, and protect underground freshwater through oversight of oil and gas drilling, development and production, reservoir depletion, and metering operations on all lands subject to the State of Alaska's police powers. AS 31.05.005; AS 31.05.030. AOGCC moves to dismiss the claims against it pursuant to Fed.R.Civ.P. 12(b)(6) because the Naval Petroleum Reserve Protection Act of 1976 (42 U.S.C. § 6501, *et seq*.) ("NPRPA") does not preempt AS 31.05.035(c) and 20 AAC 25.537(d) and does not prevent AOGCC from providing public access to well data CPAI provided to AOGCC pursuant to AS 31.05.035(a).

## BACKGROUND

### A. Factual Background

Under the first cause of action in CPAI's complaint, CPAI's primary argument is that the NPRPA preempts AS 31.05.035(c). Specifically, CPAI alleges that the NPRPA, through the use of the Outer Continental Shelf Oil and Gas Information Program (43 U.S.C. § 1352) ("Information Program") of the Outer Continental Shelf Lands Act ("OCSLA") and its regulations, preempts AS 31.05.035(c) and 20 AAC 25.537(d).[1] CPAI's first cause of action also appears

---

[1] In its complaint, CPAI refers to the Outer Continental Shelf Oil and Gas Information Program as the "Confidential Information Statute."

*ConocoPhillips Alaska, Inc., v. AOGCC*     Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint     Page 2 of 22

to allege that the Information Program protects the confidentiality of information AOGCC obtained pursuant to AS 31.05.035(a) and therefore prohibits AOGCC from providing public access to that information under AS 31.05.035(c) and 20 AAC 25.537(d). Finally, CPAI's second cause of action seeks an injunction in light of its preemption argument.

CPAI obtained lease holdings in the National Petroleum Reserve in Alaska ("NPR-A").[2] CPAI applied to AOGCC for permits to drill wells on its leases in the NPR-A.[3] CPAI completed drilling for each of its wells and obtained the well data from its operations.[4] Pursuant to AOGCC's requirements, CPAI submitted the well data to AOGCC.[5] The 24-month period of confidentiality provided by AS 31.05.035(c) has run for each of CPAI's wells.[6]

### B. Statutory Background

### 1. Naval Petroleum Reserve Production Act of 1976

At 23.6 million acres, the NPR-A is the nation's largest single unit of public land.[7] The NPR-A was established as the Naval Petroleum Reserve in 1923. In

---

[2]     Complaint for Declaratory and Injunctive Relief at 17 ("Complaint"), Docket No. 1.
[3]     *Id.* at 27.
[4]     *Id.* at 19.
[5]     *Id.* at 27.
[6]     *Id.* at 29.
[7]     *Sovereign Inupiat for a Living Arctic v. Bureau of Land Mgmt.*, 516 F. Supp. 3d 943, 946 (D. Alaska 2021), appeal dismissed, No. 21-35085, 2021 WL 3371588 (9th Cir. Mar. 9, 2021).

*ConocoPhillips Alaska, Inc., v. AOGCC*                                  Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint                                              Page 3 of 22
Case 3:22-cv-00121-SLG   Document 8-1   Filed 06/24/22   Page 3 of 22

1976, the NPRPA transferred management authority from the Secretary of the Navy to the Secretary of the Interior ("Secretary").[8] When first enacted in 1976, the NPRPA only permitted the federal government to explore for petroleum, and with a few exceptions production was generally prohibited.[9]

Following the 1979 Oil Crisis, Congress in late 1980 debated the future of the government's exploration efforts and whether to open the NPR-A to private oil and gas leasing and development.[10] In 1980, Congress amended the NPRPA through a rider to the Department of Interior appropriations bill for the fiscal year ending September 30, 1981. The rider directed the Secretary conduct "an expeditious program of competitive leasing of oil and gas in the [NPR-A]."[11] For the first time the NPR-A was open to private competition. The rider also made any information obtained by persons conducting geological and geophysical explorations in the NPR-A subject to the information disclosure condition of the Information Program—the conditions imposed upon lessees and permittees under the OCSLA.[12]

---

[8]     Pub. L. No. 94-258, §102-103 90 Stat 303 (1976).
[9]     *Sovereign Inupiat*, 516 F.Supp.3d at 953-54.
[10]    *Id.* at 954.
[11]    Pub. L. No. 96-514, 94 Stat 2957 (1980).
[12]    *Id.*

*ConocoPhillips Alaska, Inc., v. AOGCC*                    Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint                              Page 4 of 22

Case 3:22-cv-00121-SLG   Document 8-1   Filed 06/24/22   Page 4 of 22

## 2. The Outer Continental Shelf Lands Act

The OCSLA governs the development of offshore oil and gas resources in the outer Continental Shelf ("OCS"), including the leasing and "exploration, development, and production of the minerals of the outer Continental Shelf."[13] The Federal Government asserted exclusive jurisdiction over the seabed and subsoil of the OCS but allowed state law to supplement when there was a void.[14]

The Information Program requires lessees and permittees exploring for oil and gas to provide the Secretary access to all data and information obtained from such activities in accordance with regulations the Secretary prescribes.[15] The disclosure condition gives the Secretary access to information "necessary to the administration of leasing programs."[16] The Secretary utilizes this information for the purposes of carrying out the Secretary's duties under the OCSLA.[17]

---

[13]   43 U.S.C. §§ 1332, 1337.
[14]   43 U.S.C. § 1333(a)(1). *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 100 (1971) ("The Lands Act makes the Outer Continental Shelf . . . an area of exclusive federal jurisdiction"); *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 752 (9th Cir. 2022) (detailing Congress's debate on whether to apply state or federal law and how Congress's concerns about having a common body of law to regulate the OCS led to Congress deciding that federal law should primarily apply).
[15]   43. U.S.C. § 1352(a)(1)(A). *See United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 695 (9th Cir. 1984) (characterizing 43 U.S.C. § 1352 and accompanying regulations as conditions imposed upon permittees).
[16]   *Geophysical Corp. of Alaska*, 732 F.2d at 700.
[17]   43. U.S.C. § 1352(b)(1).

With regards to the handling of information the Secretary obtains pursuant to the Information Program, the Information Program contains several provisions. The Information Program requires the Secretary to prescribe regulations to "assure that the confidentiality of privileged or proprietary information received by the Secretary under this section will be maintained" and to "set forth the time periods and conditions which shall be applicable to the release of such information."[18] The Information Program also allows the states access to such information obtained by the Secretary pursuant to the Information Program, and such states that receive the information are subject to the applicable requirements as to confidentiality.[19] The Information Program allows for the commencement of a civil action for damages against the Federal Government or a State if one of their employee's violates the regulations governing the handling of information provided to the Secretary.[20]

Finally, the Information Program contains a preemption provision ("preemption provision"), 43 U.S.C. § 1352(g), titled Preemption of State law by Federal law. The preemption provision provides, "Any provision of State or local

---

[18]  43. U.S.C. § 1352(c). The regulations promulgated by the Secretary in accordance with this subsection include time periods and conditions for the release of information provided to the Secretary pursuant to the Information Program. *See* 30 C.F.R. §§ 250.197, 550.197.

[19]  43 U.S.C. § 1352(d). Disclosing information to the affected states furthers the OCSLA policy to include affected coastal states in the decision making involved in the "exploration for, and development and production of, minerals of the outer Continental Shelf." 43 U.S.C. § 1332(4).

[20]  43 U.S.C. § 1352(f).

Case 3:22-cv-00121-SLG   Document 8-1   Filed 06/24/22   Page 6 of 22

law which provides for public access to any privileged information *received or obtained* by any person *pursuant to this subchapter* is expressly preempted by the provisions of this section, to the extent that it applies to such information."[21]

### 3. Alaska Statute 31.05.035

Pursuant to AS 31.05.035(a), AOGCC requires a permittee to provide certain information obtained from wells for which AOGCC has issued a permit to drill. A permittee must provide this information to AOGCC within 30 days after completion, abandonment, or suspension of a well.[22] With regards to the handling of this information a permittee submits to AOGCC pursuant to AS 31.05.035(a), AS 31.05.035(c) prescribes a timeline for how long AOGCC will keep the information confidential and under what conditions:

> (c) The reports and information required in (a) of this section that relate to an exploratory or stratigraphic test well and those portions of an application for a permit to drill an exploratory or stratigraphic test well that the commission determines contain proprietary engineering or geotechnical information shall be kept confidential for 24 months following the 30-day filing period unless the owner of the well gives written permission to release the application and reports and information at an earlier date. If the commissioner of natural resources finds that the required reports and information contain significant information relating to the valuation of unleased land in the same vicinity, the commissioner shall keep the reports and information confidential for a reasonable time after the disposition of all affected unleased land, unless the owner of the well gives written permission to release the reports and information at an earlier date. Well surface and bottom hole locations, well depth, well status, production data, and

---

[21]    43 U.S.C. § 1352(g) (emphasis added).
[22]    AS 31.05.035(b).

*ConocoPhillips Alaska, Inc., v. AOGCC*                    Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint                    Page 7 of 22

production reports required by the commission to be filed subsequent to the 30-day filing period shall be considered public information and may not be classified confidential.

Under the authority of AS 31.05.035, AOGCC enacted 20 AAC 25.537, which similarly provides for a 24 month period of confidentiality following the 30-day filing period. After expiration of the time period for confidentiality under 20 AAC 25.537(d), 20 AAC 25.537(a) requires AOGCC to make public all data filed on a well as required under AS 31.05.035(a).

## STANDARD GOVERNING MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows early dismissal for "failure to state a claim upon which relief can be granted." A motion filed under this rule tests the legal sufficiency of the claims in the complaint. In order to survive a motion to dismiss, a complaint must provide sufficient facts "to state a claim for relief that is plausible on its face."[23]

When reviewing a motion to dismiss, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[24] A court is not required to accept every conclusion asserted in the complaint as true; rather, the court "will examine whether conclusory allegations follow from the description of fact alleged by the plaintiff."[25]

---

[23] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[24] *Vignolo v. Miller*, 120 F. 3d 1075, 1077 (9th Cir. 1997).
[25] *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).

*ConocoPhillips Alaska, Inc., v. AOGCC*                    Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint                              Page 8 of 22

Case 3:22-cv-00121-SLG   Document 8-1   Filed 06/24/22   Page 8 of 22

# ARGUMENT

## A. Alaska Statue 31.05.035(c) is Not Preempted by Federal Law.

CPAI's preemption claim in its complaint sets forth a pure question of law this court can decide in this motion to dismiss: whether AOGCC's statute that allows for public access to well data AOGCC obtained pursuant to state law is preempted by the NPRPA. CPAI's misstatements regarding the text of federal statutes and the purpose of the federal law are insufficient for this court to find that federal law preempts AS 31.05.035(c).

The United States Supreme Court has established three circumstances where federal law can preempt state law under the Supremacy Clause of the United States Constitution.[26] First, express preemption, when Congress has explicitly defined "the extent to which its enactments pre-empt state law."[27] Second, field preemption, when state law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively."[28] Third, conflict preemption, when it is "impossible for a private party to comply with both state and federal requirements, or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' "[29]

---

[26] *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990).
[27] *Id.* at 78-79.
[28] *Id.* at 79.
[29] *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

*ConocoPhillips Alaska, Inc., v. AOGCC*          Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint          Page 9 of 22
Case 3:22-cv-00121-SLG  Document 81  Filed 06/24/22  Page 9 of 22

"In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, [the court's] sole task is to ascertain the intent of Congress."[30] "Congress's intent may be express or it may be implied through the structure and purpose of a statute."[31] The court "begin[s] with the language employed by Congress and the assumption that the ordinary meaning of that language accurately represses the legislative purpose."[32]

CPAI's first cause of action relies on express and conflict preemption. CPAI's complaint alleges that the preemption provision explicitly preempts AOGCC from publicly disclosing well data AOGCC obtained pursuant to state law,[33] and that AS 31.05.035(c) conflicts with the NPRPA.[34] However, the preemption provision only applies to laws that provide access to "information received or obtained . . . pursuant to" the OCSLA; it does not apply to the information AOGCC obtains directly from a permittee pursuant to state law. In addition, AS 31.05.035(c) does not obstruct the NPRPA's purpose of providing "expeditious competitive leasing of oil and gas in the [NPR-A]" and "increase[ing] domestic oil supply as expeditiously as possible."[35]

---

[30]     *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987).
[31]     *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1150 (9th Cir. 2000).
[32]     FMC Corp. v. Holliday, 498 U.S. 52, 57 (1990).
[33]     Complaint at 40-41.
[34]     *Id.* at 45.
[35]     Pub. L. No. 96-514, 94 Stat. 2964 (1980); *Sovereign Inupiat*, 516 F. Supp. 3d at 954 (reasoning that "Congress likely opened the NPR-A to private leasing

Case 3:22-cv-00121-SLG   Document 12   Filed 06/24/22   Page 10 of 22

1. **A presumption against preemption applies to the Court's review of CPAI's claim and requires Congress to have shown a 'clear and manifest' purpose to preempt state law.**

The court must evaluate CPAI's preemption claim under the presumption that the State of Alaska's laws and regulations over matters related to health and safety are not invalidated under the Supremacy Clause.[36]

> Where, as here, the field which Congress is said to have pre-empted has been traditionally occupied by the States, [the court] starts with the assumption that the historic police powers of the States were not to be superseded by the Federal act unless that was the clear and manifest purpose of Congress. This assumption provides assurances that the federal-state balance will not be disturbed unintentionally by Congress or unnecessarily by the courts."[37]

The Supreme Court has recognized the historic police power of states to regulate the development and conservation of oil and gas.[38] The states' powers

---

*and* exploration and production in order to increase domestic oil supply as expeditiously as possible.") (emphasis in original).

[36] *Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc*., 471 U.S. 707 (1985).

[37] *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977) (quoting *Rice v. Sante Fe Elevator Corp.*, 331 U.S. 218, 240 (1947)) (internal quotations and citations omitted).

[38] *Hunter Co. v. McHugh*, 320 U.S. 222, 227 (1943) ("We have held that a state has constitutional power to regulate production of oil and gas so as to prevent waste and the secure equitable apportionment among landholders of the migratory gas and oil underlying their land, fairly distributing among them the costs of production and of the apportionment.") (citing *Lindsley v. Nat. Carbonic Gas Co.*, 220 U.S. 61, 77 (1911); *Bandini Petroleum Co. v. Superior Ct. of State of Cal. in & for Los Angeles Cnty.*, 284 U.S. 8, 22 (1931); *Champlin Ref. Co. v. Corp. Comm'n of State of Okl.*, 286 U.S. 210, 232-34 (1932); *Thompson v. Consol. Gas Utilities Corp.*, 300 U.S. 55, 76 (1937); *Patterson v. Stanolind Oil & Gas Co.*, 305 U.S. 376, 379 (1939)).

*ConocoPhillips Alaska, Inc., v. AOGCC*                    Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint                    Page 11 of 22
Case 3:22-cv-00121-SLG   Document 12   Filed 06/24/22   Page 11 of 22

extend to federally owned lands within its boundaries until Congress expresses its

intent to regulate the subject exclusively.[39] Congress has historically not sought to

obtain exclusive jurisdiction over oil and gas production and conservation that is

subject to both state and federal jurisdiction.[40]

   Alaska has regulated the production of oil and gas in Alaska since passage of

the Alaska Oil and Gas Conservation act of 1955 (the "territorial conservation

act"), which included laws requiring the filing of well data.[41] At that time the

Alaska Oil and Gas Conservation Commission implemented its provisions to

"regulate, for conservation purposes, the drilling, producing and plugging of wells,

---

[39]   *See Kleppe v. New Mexico*, 426 U.S. 529, 543 (1976) ("Absent consent or
cession a State undoubtedly retains jurisdiction over federal lands within its
territory"); *United States v. Gardner*, 107 F.3d 1314, 1320 (9th Cir. 1997) ("The
state government and the federal government exercise concurrent jurisdiction over
the [federally owned] land."); *Texas Oil & Gas Corp. v. Phillips Petroleum Co.*,
277 F. Supp. 366, 369 (W.D. Okla. 1967), aff'd, 406 F.2d 1303 (10th Cir. 1969)
("the authorities treating with the matter of exclusive control of federal lands by
the Federal Government clearly and definitely hold that State law and the State
police power extends over the federal public domain unless and until Congress has
determined to deal exclusively with the subject.") (citing *State of Colorado v. Toll*,
268 U.S. 228 (1925); *McKelvey v. United States*, 260 U.S. 353 (1922); *Int'l Bridge
Co. v. People of State of New York*, 254 U.S. 126 (1920); *Omachevarria v. State of
Idaho*, 246 U.S. 343 (1918); *United States v. Hatahley*, 220 F.2d 666 (10th Cir.
1955), reversed on other grounds, 351 U.S. 173 (1956)).
[40]   *See Texas Oil & Gas Corp.*, 277 F. Supp. at 369-71 (discussing how the text
of Federal Mineral Leasing act of 1920 showed Congress did not intent to obtain
exclusive control over federal lands leased for oil and gas development to the
exclusion states).
[41]   *State Dep't of Nat. Res. v. Arctic Slope Reg'l Corp.*, 834 P.2d 134, 135
(Alaska 1991).

Case 3:22-cv-00121-SLG   Document 11   Filed 06/24/22   Page 12 of 22

the spacing of wells, and the disposal of oil field wastes" and "require the filing of well data."[42] Alaska continued to regulate oil and gas production after it became a state, with the Department of Natural Resources ("DNR") replacing the Oil and Gas Conservation Commission.[43] The territorial conservation act was codified at AS 31.05, and the responsibility for administering AS 31.05 was later transferred from DNR to AOGCC.[44] AOGCC now exercises its authority "to all land in the state lawfully subject to its police powers, including land of the United States and land subject to the jurisdiction of the United States."[45] Thus, the Court must presume that Congress did not intend to supersede the historic police powers of the states to regulate oil and gas production and conservation unless that was the 'clear and manifest' purpose of Congress.

    **2. Alaska Statute 31.05.035(c) and 20 AAC 25.537(d) are not pre-empted because the scope of the Information Program's preemption provision does not extend to the release of information under AS 31.05.035(c) and 20 AAC 25.537(d).**

The reason CPAI's express preemption claim fails is straightforward—the preemption provision on which CPAI relies does not reach information a state obtains or receives by means other than the OCSLA. "[W]hen acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in

---

[42]   *Id.* (citing § 47-7-7 Alaska Compiled Laws Annotated (Supp. 1958).
[43]   *Id.*
[44]   *Id.* (citing Ch. 158, § 1, SLA 1978).
[45]   AS 31.05.027.

*ConocoPhillips Alaska, Inc., v. AOGCC*         Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint         Page 13

express terms."[46] However, "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted."[47] To determine whether a state law is preempted, the court "need only identify the domain expressly pre-empted . . . ."[48]

CPAI's express preemption argument relies on the preemption provision in the Information Program, 43 U.S.C. 1352(g), because the NPRPA subjects geological and geophysical information acquired by persons exploring the NPR-A to the Information Program disclosure conditions. However, the preemption provision only preempts a state or local law that "provides for public access to any privileged information *received or obtained by any person pursuant to*" the OCSLA.[49] The preemption provision does not attempt to reach any state or local laws that would provide for public access of information obtained by other means, such as pursuant to a state's own laws regulating oil & gas production and conservation. Instead, in precise and narrow language, the preemption provision only reaches information received or obtained pursuant to the OCSLA, which includes information obtained pursuant to the Information Program itself.[50] The

---

[46]     *Guerra*, 479 U.S. at 280.

[47]     *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992).

[48]     *Id.*

[49]     43 U.S.C. § 1352(g).

[50]     To the extent the court finds the express terms ambiguous, AOGCC's interpretation of the explicit language is consistent with Congress's intent in enacting the preemption provision. *See* H.R. REP. 95-590, 171, 1978

*ConocoPhillips Alaska, Inc., v. AOGCC*                    Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint                    Page 14

Case 3:22-cv-00121-SLG   Document 11   Filed 06/24/22   Page 14 of 22

language of the preemption provision cannot be read to encompass information obtained by a state any other way.

Alaska Statute 31.05.035(c) and 20 AAC 25.537(d) only allow for public access to information AOGCC obtains pursuant to AS 31.05.035(a). Thus, AS 31.05.035(c) and 20 AAC 25.537(d) do not allow for public access to information the state received or obtained pursuant to the OCSLA and is accordingly not within the reach of laws Congress sought to preempt in the preemption provision.

### 3. Alaska Statute 31.05.035(c) does not conflict with the NPRPA by obstructing its purpose.

There are two situations under which the courts have found that state law is preempted under conflict preemption: "where it is impossible to comply with both state and federal requirements" and "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[51] Under either situation a court may conclude that Congress implicitly intended to preempt state law.[52]

_____

U.S.C.C.A.N. 1450, 1577 ("Subsection 26(G) preempts any state law which might provide for public access to privileged information obtained by the state *from the secretary*.")(emphasis added).

[51]    *Indus. Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1309 (9th Cir. 1997).

[52]    *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 959 F.3d 1201, 1212 (9th Cir. 2020), cert. denied sub nom. *Volkswagen Grp. of Am., Inc. v. Env't Prot. Comm'n of Hillsborough Cnty.*, 142 S. Ct. 521 (2021).

CPAI does not allege compliance with both federal and state law in this instance is impossible. [53] Instead, CPAI's argument focuses on the second conflict preemption situation, often referred to as object preemption. CPAI claims that AS 31.05.035(c) and 20 AAC 25.537(d) "impermissibly interfere with Congress's important objectives . . . ."[54] Specifically, CPAI claims that AS 31.05.035(c) and 20 AAC 25.537(d), which only keep information acquired pursuant to AS 31.05.035(a) confidential after 24 months and allow for public access after the term of confidentiality, impermissibly interfere with the purpose of Public Law No. 96-514 "to create an 'expeditious program of competitive private leasing of oil and gas in the NPR-A."[55] CPAI alleges that Congress intended to assure confidentiality of information obtained exploring the NPR-A as an incentive to further its purpose and therefore allowing public access to the information obstructs Congress's objectives.[56]

When evaluating an object preemption claim, "a court must identify the 'full purposes and objectives' of the federal law from 'the text and structure of the

---

[53]     CPAI claims it has complied with AOGCC's requirements to drill the wells. Complaint at 17. Nowhere in the Complaint does CPAI claim that the requirements of AS 31.05.035(c) make it impossible to comply with both federal and state law.
[54] Complaint at 45.
[55]     *See* Complaint at 44-45.
[56]     *Id.* at 45.

*ConocoPhillips Alaska, Inc., v. AOGCC*                              Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint                           Page 16
Case 3:22-cv-00121-SLG   Document 12   Filed 06/24/22   Page 16 of 22

statute at issue.' "[57] When alleged preemption would supersede the historic police powers of the States, which is the case here, the purpose of Congress to preempt the state law must be "clear and manifest."[58]

Nothing in the NPRPA resembles even a shadow of CPAI's hollow allegation that Congress included the disclosure condition of the Information Program in the NPRPA to incentivize private exploration.[59] The disclosure condition in 43 U.S.C. § 1352(a)(1)(A) is a requirement placed on permittees and lessees in exchange for the opportunity explore for oil and gas—not an incentive. It made anyone that acquired information exploring the NPR-A subject to the same disclosure conditions as anyone exploring the OCS. The purpose for the condition is to allow the Secretary access to information "necessary to the administration of leasing programs."[60] It does not show Congress intended to do anything other than impose the disclosure condition on information acquired during exploration of the NPR-A so the Secretary could utilize the information for administration of the

---

[57]    *In re Vokswagen*, 959 F.3d at 1212 (quoting *Kansas v. Garcia*, 140 S. Ct. 791, 804 (2020)).
[58]    *Jones*, 430 U.S. at 525.
[59]    Even if providing protections for data obtained during exploration could operate as an incentive for more competition, nothing in the NPRPA show's that was Congress's clear and manifest purpose in imposing the condition under the NPRPA.
[60]    *Geophysical Corp. of Alaska*, 732 F.2d at 700 ("The compilation of data by the Secretary is an intrinsic part of this overall plan. It provides information necessary to the administration of leasing programs.").

*ConocoPhillips Alaska, Inc., v. AOGCC*                      Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint                    Page 17 of 22
Case 3:22-cv-00121-SLG   Document 11   Filed 06/24/22   Page 17 of 22

leasing program, the same purpose the condition fulfills for the OCSLA.[61] Neither does the rest of the Information Program show such a Congressional intent, with its narrow regulations and preemption provision that only apply to the information provided to the Secretary. In fact, the NPRPA actually contains an exploration incentives provision, 43 U.S.C. § 6506a(k), that does not contain the disclosure condition or anything resembling a clear and manifest of superseding any state laws relating to the acquiring and handling of information obtained exploring the NPR-A.

The structure and purpose of the NPRPA, as amended by Public Law No. 96-514, show's Congress's intent to open the NPR-A to and incentivize private exploration. Pursuant to goal, Congress directed the Secretary to "conduct an expeditious program of competitive leasing of oil and gas in the" NPR-A, which is something the Federal Government routinely regulates alongside the states. [62] By not claiming exclusive jurisdiction as it did with the OCS, Congress intended to allow for joint federal and state regulation of oil and gas in the NPR-A and to allow Alaska to issue well permits in accordance with its historic police powers. Nothing in the structure or purpose of the statute that shows that Congress thought

---

[61]     *Id.*

[62]     *See Gulf Oil Corp. v. Wyoming Oil & Gas Conservation Comm'n, 693 P.2d 227, 235 (Wyo. 1985)* (discussing two provisions of the Mineral Lands Leasing Act that indicate an absence of congressional intent to assert exclusive control).

*ConocoPhillips Alaska, Inc., v. AOGCC*                    Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint                    Page 18 of 22
Case 3:22-cv-00121-SLG   Document 11   Filed 06/24/22   Page 18 of 22

that ending any part of Alaska's historic practice regulating the oil and gas industry, which has been a part of the regulatory process in Alaska since before it was a state, was necessary to further its goals of encouraging exploration and competition in the NPR-A.

Moreover, AS 31.05.035(c) does not interfere with private exploration of the NPR-A for oil and gas development. It allows a permittee a reasonable period of time to utilize all information gained from exploratory wells for the purpose of development. It is the same regulations that apply to all such permittees in Alaska.

The purpose of the court's preemption analysis, included implied preemption analysis, is to determine whether Congress intended to preempt the state law in question.[63] The structure and purpose of the NPRPA are devoid of anything that could be viewed as an attempt to supersede Alaska's longstanding practices regulating oil and gas production and conservation within its jurisdiction such that AS 31.05.035(c) would obstruct Congress's efforts to open the NPR-A to competitive leasing for oil and gas exploration and development. What is more, contrary to CPAI's claim the structure and purpose of the NPRPA show that congress did not include the disclosure condition as an incentive but rather to

---

[63]    *California Fed. Sav. & Loan Ass'n*, 479 U.S. at 280 ("In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress.").

*ConocoPhillips Alaska, Inc., v. AOGCC*                    Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint                    Page 19

Case 3:22-cv-00121-SLG   Document 12   Filed 06/24/22   Page 19 of 22

provide the Secretary with information necessary for the administration of the leasing program. AOGCC's regulation of oil and gas conservation and development within the NPA-A supplements federal law, it does not conflict with, or otherwise obstruct the purpose of, the NPRPA.

## B. 43 U.S.C. § 1352 Does Not Prohibit AOGCC from Providing Public Access to CPAI's Well Data.

To the extent CPAI's first cause of action includes its argument that the Information Program and regulations promulgated thereunder prohibit AOGCC from allowing public access to the well data CPAI provided to AOGCC in accordance with AS 31.05.035(a), CPAI's claim fails because 43 U.S.C. § 1352 does not regulate a state's handling of information not obtained pursuant to the OCSLA. CPAI does not claim that AOGCC obtained its well data pursuant to the OCSLA. In addition, AS 31.05.035(c) and 20 AAC 25.537(d) only apply to information AOGCC obtained from a permittee pursuant to AS 31.05.035(a).

CPAI provided AOGCC the well data in accordance with AOGCC's prescribed laws and regulations.[64] Thus, the well data is not protected under the Information Program, 43 U.S.C. § 1352, and regulations promulgated thereunder.

---

[64]     Complaint at 27.

*ConocoPhillips Alaska, Inc., v. AOGCC*                    Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint                    Page 20 of 22

**C. CPAI is Not Entitled to Injunctive Relief Because AOGCC is Not Acting Unlawfully.**

CPAI's second cause of action is for injunctive relief based on its preemption allegation in its first cause of action.[65] As demonstrated in this motion, AS 31.05.035(c) and 20 AAC 25.537 are not preempted by federal law. Thus, CPAI is not entitled to injunctive relief.

## CONCLUSION

For the reasons above, Alaska Statute 31.05.035(c) is not preempted by federal law and CPAI's well data it provided to AOGCC pursuant to AS 31.05.035(a) is not protected under 43 U.S.C. § 1352. Thus, because CPAI has failed to state any claim upon which this Court can grant relief, the Court must dismiss CPAI's c against AOGCC.

DATED: June 24, 2022.

TREG R. TAYLOR
ATTORNEY GENERAL

By:   */s/Zjok T. Durst*
        Zjok T. Durst
        Assistant Attorney General
        Alaska Bar No. 1311080
        Department of Law
        1031 West Fourth Avenue, Ste. 200
        Anchorage, AK 99501
        Phone:  (907) 269-5232
        Facsimile:  (907) 276-3697
        Email:  zjok.durst@alaska.gov
        Attorney for State of Alaska

---

[65]      *Id.* at 47-52.

*ConocoPhillips Alaska, Inc., v. AOGCC*                    Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint                    Page 21 of 22

Case 3:22-cv-00121-SLG   Document 12   Filed 06/24/22   Page 21 of 22

**CERTIFICATE OF COMPLIANCE**

I certify that this motion complies with the type-volume limitation of Local Civil Rule 7.4 because this motion contains 4855 words and has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

*/s/Zjok T. Durst*
Zjok T. Durst, Assistant Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2022, I electronically filed the foregoing Memorandum in Support of Motion to Dismiss Complaint using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/Zjok T. Durst*
Zjok T. Durst, Assistant Attorney General

*ConocoPhillips Alaska, Inc., v. AOGCC*     Case No.: 3:22-cv-00121-SLG
Memo in Support of Motion to Dismiss Complaint     Page 22 of 22

Case 3:22-cv-00121-SLG   Document 12   Filed 06/24/22   Page 22 of 22