# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

CONOCOPHILLIPS ALASKA, INC.,

        Plaintiff,

    v.

ALASKA OIL AND GAS
CONSERVATION COMMISSION,

        Defendant.

Case No. 3:22-cv-00121-SLG

## ORDER RE MOTION TO DISMISS COMPLAINT AND MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court are two motions: Defendant Alaska Oil and Gas Conservation Commission's ("AOGCC") Motion to Dismiss Complaint pursuant to Federal Rule of Procedure 12(b)(6) at Docket 8, and Plaintiff ConocoPhillips Alaska, Inc.'s ("CPAI") Motion for Partial Summary Judgment at Docket 12.[1] The motions are fully briefed.[2] Oral argument on the motions was held on November 22, 2022.[3] This case involves one legal dispute: does federal law preempt state law with respect to the public release of CPAI's Well Data from the National Petroleum Reserve in Alaska?

---

[1] *See also* Docket 13 (Declaration of John F. Schell, Jr. in Support of ConocoPhillips Alaska, Inc.'s Motion for Partial Summary Judgment).

[2] *See* Docket 11 (Plaintiff's Opp'n to Motion to Dismiss); Docket 18 (Defendant's Reply in Support of Motion to Dismiss); Docket 22 (Defendant's Opp'n to Motion for Partial Summary Judgment); and Docket 26 (Reply in Support of Motion for Partial Summary Judgment).

[3] Docket 33 (Minutes re Oral Arg.).

## BACKGROUND

The National Petroleum Reserve in Alaska ("NPR-A") is a 23.6-million-acre area on Alaska's North Slope and is the nation's largest single unit of public land.[4] Formerly known as Naval Petroleum Reserve Numbered 4, the NPR-A was established in 1923 and was one of four Naval Petroleum Reserves created from public lands to assure the Navy's ships would have adequate petroleum supplies.[5] "However, the Organization of Petroleum Exporting Countries ('OPEC') oil embargo during the 1970s established that the Nation had a need for oil that exceeded the needs of the Navy."[6] In response, in 1976, Congress enacted the Naval Petroleum Reserves Production Act ("NPRPA"), 42 U.S.C. § 6501, *et seq.*, which transferred NPR-A management authority from the Secretary of the Navy to the Secretary of the Interior.[7] As first enacted, only the federal government was permitted to explore for petroleum.[8] In 1980, the NPRPA was amended by an appropriations rider ("Rider") that directed the Secretary of the Interior to open the

---

[4] *Sovereign Inupiat for a Living Arctic v. Bureau of Land Mgmt.*, 516 F. Supp. 3d 943, 946 (D. Alaska 2021).

[5] H.R. REP. NO. 94-81, at 5-6 (1975).

[6] *N. Alaska Env't Ctr. v. Norton*, 361 F. Supp. 2d 1069, 1072 (D. Alaska 2005), *aff'd sub nom. N. Alaska Env't Ctr. v. Kempthorne*, 457 F.3d 969 (9th Cir. 2006).

[7] Pub. L. No. 94-258; 42 U.S.C. § 6503(a).

[8] *Sovereign Inupiat*, 516 F. Supp. 3d at 953-54.

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 2 of 34

NPR-A to private exploration and establish "an expeditious program of competitive leasing of oil and gas in the" NPR-A.[9]

The Rider, titled "Competitive leasing of oil and gas," was codified at 42 U.S.C. § 6506a and governs oil and gas leasing in the NPR-A.[10] Certain provisions of the Rider incorporate provisions of the Outer Continental Shelf Lands Act ("OCSLA"), which governs oil and gas leasing on the Outer Continental Shelf.[11] First, the Rider directs that the bidding systems used in NPR-A lease sales be based on the OCSLA bidding systems.[12] Second, the Rider subjects any information acquired in geological and geophysical explorations in the NPR-A "to the conditions of 43 U.S.C. 1352(a)(1)(A),"[13] which is a subsection within OCSLA's § 1352 titled "Oil and Gas Information Program."[14] The text of 43 U.S.C. § 1352(a)(1)(A) reads as follows:

> **(a) Access to data and information obtained by lessee or permittee from oil or gas exploration, etc.; data obtained by Federal department or agency from geological and geophysical explorations**

---

[9] Pub. L. No. 96-514, 94 Stat. 2964 (1980) (codified at 42 U.S.C. § 6506a).

[10] 42 U.S.C. § 6506a.

[11] 43 U.S.C. § 1331, *et seq.*

[12] 42 U.S.C. § 6506a(f).

[13] 42 U.S.C. § 6506a(m) states: "Any agency of the United States and any person authorized by the Secretary may conduct geological and geophysical explorations in the National Petroleum Reserve in Alaska which do not interfere with operations under any contract maintained or granted previously. Any information acquired in such explorations shall be subject to the conditions of 43 U.S.C. 1352(a)(1)(A)."

[14] 43 U.S.C. § 1352.

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 3 of 34

> **(1)(A)** Any lessee or permittee conducting any exploration for, or development or production of, oil or gas pursuant to this subchapter shall provide the Secretary access to all data and information (including processed, analyzed, and interpreted information) obtained from such activity and shall provide copies of such data and information as the Secretary may request. Such data and information shall be provided in accordance with regulations which the Secretary shall prescribe.[15]

No other provision within the Rider—or within the NPRPA—addresses information or data obtained from NPR-A explorations.

Within OCSLA's Oil and Gas Information Program, however, paragraph (c) provides for the confidentiality of privileged or proprietary exploration information "received by the Secretary," and paragraph (g) expressly preempts "[a]ny provision of State or local law which provides for public access to any privileged information received or obtained by any person pursuant to this subchapter . . . ."[16]

CPAI's complaint alleges it is a Delaware corporation registered to do business in Alaska and is "Alaska's largest oil producer and leader in oil and gas exploration and development in the state for more than 50 years."[17] CPAI states it has "acquired and developed significant lease holdings in the northeast portion of the NPR-A" pursuant to the NPRPA by obtaining federal leases with the Bureau of Land Management ("BLM").[18] Each of CPAI's leases with BLM is for an initial

---

[15] *Id.* § 1352(a)(1)(A).

[16] *Id.* § 1352.

[17] Docket 1 at 2, ¶ 2.

[18] Docket 1 at 7, ¶ 17; 8, ¶ 26.

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 4 of 34

Case 3:22-cv-00121-SLG   Document 35   Filed 03/08/23   Page 4 of 34

period of 10 years and "subject to renewal or extension."[19] CPAI has drilled several wells on its leases and "obtained substantial Well Data from its well drilling operations," which it then transmitted to BLM "as required by 43 C.F.R. § 3152.6."[20] BLM "hold[s] the Well Data confidential under the federal oil and gas lease terms"[21] and will not disclose the Well Data "to the public until after the leases expired."[22]

CPAI asserts it "rel[ies] upon assurances of confidentiality for its well data when it makes sizable exploratory investments of th[e] type" it has done in the NPR-A,[23] in which it "has invested tens of millions of dollars."[24] CPAI maintains it has never publicly disclosed the Well Data, which CPAI asserts is proprietary, contains trade secrets, holds substantial economic value to CPAI, and provides CPAI with a significant competitive advantage over its competitors that would be lost should the data be publicly disclosed.[25] CPAI maintains that if AOGCC "or any other state agency . . . [were] to disclose CPAI's confidential Well Data prior to the

---

[19] See Docket 13-1 at 2, 6, 11, 17, 26. 42 U.S.C. § 6506a(i)(1) provides that each lease "shall be extended for so long thereafter as oil or gas is produced from the lease in paying quantities, oil or gas is capable of being produced in paying quantities, or drilling or reworking operations, as approved by the Secretary, are conducted on the leased land."

[20] Docket 1 at 7, ¶¶ 18-19; Docket 13 at 2, ¶ 3.

[21] Docket 1 at 8, ¶ 23.

[22] Docket 13 at 3, ¶ 5.

[23] Docket 13 at 4, ¶ 5.

[24] Docket 13 at 2, ¶ 3.

[25] Docket 1 at 8, ¶¶ 23-25; Docket 13 at 3, ¶ 4.

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 5 of 34

Case 3:22-cv-00121-SLG   Document 35   Filed 03/08/23   Page 5 of 34

time set by federal law, it would serve as a disincentive for CPAI to drill further wells in the NPR-A."[26]

AOGCC is "an independent quasi-judicial agency of the State of Alaska that acts to prevent waste, protect correlative rights, improve recovery, and protect underground freshwater through oversight of oil and gas drilling, development and production, reservoir depletion, and metering operations on all lands subject to the State of Alaska's police powers."[27]  Pursuant to Alaska Statute ("AS") 31.05.035, AOGCC may require permittees to provide Well Data to the agency "within 30 days after the completion, abandonment, or suspension of a well."[28]  AS 31.05.035(c) and Title 20 of the Alaska Administrative Code ("AAC"), Section 25.537(d) (collectively, the "State Disclosure Laws"), provide that such data will be kept confidential for 24 months following the 30-day filing period unless the permittee grants permission for early release.[29]  After 24 months has passed, AS 31.05.035(c) and 20 AAC 25.537(d) require AOGCC to make the filed Well Data public unless the Commissioner of the Department of Natural Resources ("DNR") has made a finding "that the required reports and information [from a well] contain

---

[26] Docket 13 at 4, ¶ 6.

[27] Docket 8-1 at 1-2.

[28] ALASKA STAT. § 31.05.035(b) (2007).

[29] *Id.* § 31.05.035(c); ALASKA ADMIN. CODE tit. 20, § 25.537(d) (2018).

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 6 of 34

Case 3:22-cv-00121-SLG   Document 35   Filed 03/08/23   Page 6 of 34

significant information relating to the valuation of unleased land in the same vicinity."[30]

CPAI's federal leases with BLM include express terms that BLM will withhold CPAI's Well Data from the public during the "existence of [the] lease."[31] CPAI also "applied for and received AOGCC prescribed permits to drill the Wells, made the AOGCC prescribed reports, and submitted the data prescribed by AOGCC"[32] in order to "allow the federal and state regulatory systems to work harmoniously."[33] When CPAI transmitted the Well Data to AOGCC, CPAI "included an express statement that the Well Data must be held confidential pursuant to federal law."[34] CPAI indicates that the Well Data "provided to AOGCC was a subset of the same Well Data . . . provided to BLM."[35]

To date, AOGCC has kept CPAI's Well Data confidential, but "the 24-month period provided by AS 31.05.035(c) has run for each of the Wells."[36] When CPAI requested that the DNR Commissioner continue to keep the Well Data confidential

---

[30] ALASKA STAT. § 31.05.035(c); ALASKA ADMIN. CODE tit. 20, § 25.537(d).

[31] Docket 1 at 8, ¶ 21.

[32] Docket 1 at 9, ¶ 27.

[33] Docket 13 at 5, ¶ 7.

[34] Docket 1 at 9, ¶ 27; Docket 13 at 5, ¶ 7; Docket 13-2.

[35] Docket 13 at 5, ¶ 7.

[36] Docket 1 at 9, ¶ 29.

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 7 of 34

Case 3:22-cv-00121-SLG   Document 35   Filed 03/08/23   Page 7 of 34

for the duration of the leases, the DNR Commissioner denied CPAI's request.[37] The "AOGCC has indicated that, absent judicial action, the Well Data will be disclosed to the public—including CPAI's competitors."[38] CPAI contends that such a disclosure would violate federal law and cause CPAI to lose its competitive advantage, which resulted "from its investment in the leases and drilling, for which [CPAI] took on the risks of failure and paid tens of millions of dollars."[39]

CPAI filed a complaint in this Court challenging the State Disclosure Laws, seeking declaratory relief and a permanent injunction.[40] On June 24, 2022, the AOGCC filed its Motion to Dismiss Complaint.[41] On July 29, 2022, CPAI filed its Motion for Partial Summary Judgment.[42]

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action with certain claims arising under federal law, 42 U.S.C. § 6501, *et seq.* Whether a federal law preempts a state law is a question of federal law.[43]

---

[37] Docket 1 at 10, ¶¶ 30, 32.

[38] Docket 1 at 10, ¶ 32.

[39] Docket 1 at 11, ¶ 33.

[40] Docket 1 at ¶¶ 34-52. There is also a pending state court case: *ConocoPhillips Alaska, Inc. v. Alaska Dep't of Nat. Res.*, No. 3AN-21-09171CI (Alaska Super. Ct. filed Dec. 27, 2021).

[41] Docket 8.

[42] Docket 12. CPAI seeks summary judgment only as to its request for a declaratory judgment. Docket 12 at 3 n.1.

[43] *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 214 (1985).

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 8 of 34

Case 3:22-cv-00121-SLG   Document 35   Filed 03/08/23   Page 8 of 34

# LEGAL STANDARD

## I.      Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[44]  A complaint must provide "well-pleaded facts, not legal conclusions, that 'plausibly give rise to an entitlement to relief.'"[45]

## II.      Rule 56(a)

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A case with no disputed material facts that presents a pure question of law is suitable for dispositive relief.[46]

---

[44] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[45] *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (first citing *Twombly*, 550 U.S. at 570; and then quoting *Iqbal*, 556 U.S. at 679).

[46] *See Smith v. Califano*, 597 F.2d 152, 155 n.4 (9th Cir. 1979) (holding that where "parties . . . have agreed on the material facts" and "the dispute involv[ed] the proper interpretation of relevant statutes and regulations[,] . . . the case could . . . be resolved as a matter of law, [and] summary judgment was the proper procedural device").

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 9 of 34

Case 3:22-cv-00121-SLG   Document 35   Filed 03/08/23   Page 9 of 34

## DISCUSSION

At issue is whether federal law preempts state law so as to preclude AOGCC from releasing to the public CPAI's Well Data from the National Petroleum Reserve in Alaska prior to the expiration of CPAI's leases.[47]

CPAI asserts that "AOGCC's application of the State Disclosure Laws to allow early public disclosure of CPAI's Well Data is preempted under both the conflict preemption and express preemption doctrines."[48]  CPAI contends that the Rider's reference to one section of 43 U.S.C. § 1352—"the conditions of 43 U.S.C. 1352(a)(1)(A)"[49]—incorporates the Oil and Gas Information Program as a whole.[50] CPAI maintains that its Well Data is therefore covered by paragraph (c) of § 1352,

---

[47] *See* Docket 8-1 at 9 ("CPAI's preemption claim in its complaint sets forth a pure question of law this court can decide in this motion to dismiss . . . ."); Docket 12 at 19 ("CPAI's preemption claim . . . is thus appropriate for resolution by summary judgment.").

[48] Docket 12 at 18. CPAI also notes that this is an "as applied" preemption challenge "because AOGCC's proposed application of the State Disclosure Laws in this instance is unconstitutional. If AOGCC adhered to the federal law confidentiality protections, thus reconciling the two systems, there would be no preemption issue."  Docket 12 at 18 n.83.

[49] 43 U.S.C. § 1352(a)(1)(A) provides:

> **(a) Access to data and information obtained by lessee or permittee from oil or gas exploration, etc.; data obtained by Federal department or agency from geological and geophysical explorations**
>
> **(1)(A)** Any lessee or permittee conducting any exploration for, or development or production of, oil or gas pursuant to this subchapter shall provide the Secretary access to all data and information (including processed, analyzed, and interpreted information) obtained from such activity and shall provide copies of such data and information as the Secretary may request. Such data and information shall be provided in accordance with regulations which the Secretary shall prescribe.

[50] Docket 1 at 6, ¶ 15.

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 10 of 34

which directs the Secretary to prescribe regulations to protect the confidentiality of the lessees' and permittees' data, and paragraph (g), which provides that "[a]ny provision of State or local law which provides for public access to any privileged information received or obtained by any person pursuant to this subchapter is expressly preempted by the provisions of this section, to the extent that it applies to such information."[51] CPAI asserts that paragraph (g) thus expressly preempts the State Disclosure Laws that would permit disclosure of the Well Data before CPAI's leases expire.[52]

CPAI also contends that the Alaska state "laws and regulations conflict with federal law and impermissibly interfere with Congress's important objectives and are thus preempted."[53] CPAI asserts that 30 C.F.R. Part 552, which are the regulations prescribed by the Secretary pursuant to 43 U.S.C. § 1352(a)(1)(A), "contain explicit language providing that a lessee's exploration data will remain confidential absent the lessee's permission for public disclosure."[54]

AOGCC does not dispute that the NPRPA's reference to the specific paragraph of 43 U.S.C. § 1352(a)(1)(A) incorporates 43 U.S.C. § 1352 as a whole. Rather, it asserts that the express preemption clause in 43 U.S.C. § 1352(g)

---

[51] Docket 1 at 11-12, ¶¶ 37-38; 43 U.S.C. § 1352(c), (g).

[52] Docket 1 at 13, ¶ 41.

[53] Docket 1 at 14-15, ¶ 45.

[54] Docket 1 at 12-13, ¶ 39.

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 11 of 34

applies only to "information received or obtained . . . pursuant to" federal law and does not apply to CPAI's Well Data because AOGCC obtained that data directly from CPAI pursuant to Alaska state law.[55]  AOGCC further asserts that the State Disclosure Laws do not obstruct Congress's objective to incentivize private oil and gas exploration in the NPR-A.[56]  Rather, AOGCC contends that 43 U.S.C. § 1352(a)(1)(A) imposes a "disclosure condition on information acquired during exploration of the NPR-A" that is not an incentive but rather "a requirement placed on permittees and lessees in exchange for the opportunity [to] explore for oil and gas."[57]  AOGCC also points out that 43 U.S.C. § 6506a(k) of the NPRPA specifically addresses exploration incentives, but that keeping exploration data confidential does not appear in that section.[58]

The Supremacy Clause establishes that "the Law of the United States . . . shall be the supreme Law of the Land."[59]  At issue is whether Congress, in enacting the Rider and referencing a section of OCSLA's Oil and Gas Information Program, intended to preempt the State Disclosure Laws that would permit public disclosure of CPAI's Well Data before CPAI's leases expire.

---

[55] Docket 8-1 at 10.

[56] Docket 8-1 at 17.

[57] Docket 8-1 at 17.

[58] Docket 8-1 at 18.

[59] U.S. Const. art. VI, cl. 2.

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 12 of 34

## I.     Express Preemption

CPAI contends that Alaska state law is expressly preempted by paragraph (g) of the OCSLA Oil and Gas Information Program, as incorporated by the NPRPA Rider.[60]  AOGCC does not dispute that the NPRPA incorporates paragraph (g) of the OCSLA Oil and Gas Information Program, but it asserts that the preemption clause applies only to information obtained pursuant to federal law and not to information that AOGCC obtained directly from CPAI pursuant to state law.[61] "Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision."[62] "Express preemption is a question of statutory construction, requiring a court to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law."[63]

In looking at the "plain wording" of § 6506a(m) of the NPRPA, the statute references only subparagraph (a)(1)(A) of the OCSLA Oil and Gas Information Program.[64]   That subparagraph requires lessees or permittees to provide

---

[60] 43 U.S.C. § 1352(g); Docket 12 at 29-38.

[61] Docket 8-1 at 10; Docket 34 at 8 (Partial Tr. of Oral Arg., Nov. 22, 2022).

[62] *Arizona v. United States*, 567 U.S. 387, 399 (2012).

[63] *Jones v. Google L.L.C.*, 56 F.4th 735, 739-40 (9th Cir. 2022).

[64] 42 U.S.C. § 6506a(m) ("Any information acquired in such explorations shall be subject to the conditions of 43 U.S.C 1352(a)(1)(A).").

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 13 of 34

exploration information to the Secretary of the Interior.[65]  While Congress clearly could have expressly incorporated the entire Oil and Gas Information Program into the NPRPA, it did not.  Although CPAI and AOGCC seem to agree that NPRPA § 6506a(m)'s reference to subparagraph (a)(1)(A) means incorporation of the entire OCLSA Oil and Gas Information Program statute, neither party points to any case law or secondary sources supporting the proposition that a reference to one specific section of a statute incorporates more than just that section.[66]  On the contrary, "[a] statute of specific reference adopts only the particular parts of the statute to which it refers."[67]

While the Court does find some ambiguity as to what Congress intended in making "the conditions" of subparagraph (a)(1)(A) apply to NPR-A leases, there is no "clear statement" that the express preemption clause of the OCSLA Oil and Gas Information Program is incorporated by reference into the NPRPA.[68]  Accordingly, the Court finds that the State Disclosure Laws are not expressly preempted.

---

[65] 43 U.S.C 1352(a)(1)(A).  The subparagraph also directs that "data and information shall be provided in accordance with regulations which the Secretary shall prescribe"; such regulations are found at 30 C.F.R. § 552.1, *et seq.  Id.  See* further discussion *infra* at paragraph II.C.

[66] Docket 12 at 29-40; Docket 8-1 at 10-15.

[67] 2B Norman J. Singer & Shambie Singer, Statutes and Statutory Construction § 51:8 (7th ed. 2012).

[68] *Google L.L.C.*, 56 F.4th at 739 ("Congress may expressly preempt state law by enacting a clear statement to that effect." (quoting *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1211 (9th Cir. 2020))); *see* discussion *infra* at paragraph II.B.

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 14 of 34

Case 3:22-cv-00121-SLG   Document 35   Filed 03/08/23   Page 14 of 34

## II. Conflict Preemption

CPAI asserts that if the State Disclosure Laws are not expressly preempted, then they are preempted under a theory of obstacle preemption. CPAI contends that the Rider preempts the State Disclosure Laws "because they conflict with and stand as an obstacle to Congress's objective to incentivize private oil and gas exploration and development in the NPR-A."[69] CPAI asserts there is ambiguity in 42 U.S.C. § 6506a(m) insofar as "it says that Congress is adopting the conditions of" 43 U.S.C. § 1352(a)(1)(A).[70] AOGCC maintains that there is no ambiguity[71] and that the State Disclosure Laws "do[] not interfere with private exploration of the NPR-A for oil and gas development."[72]

"Congress may expressly preempt state law by enacting a clear statement to that effect."[73] However, "Congress may also preempt state law implicitly."[74] The task of determining whether Congress intended to preempt state law in the absence of an expressly stated intent to do so is "guided by two cornerstones of .

---

[69] Docket 12 at 21. CPAI does not assert field preemption or the subset of conflict preemption where "compliance with both state and federal law is impossible." *See* Docket 12 at 20-40; *In re Volkswagen*, 959 F.3d at 1212.

[70] Docket 34 at 7-8.

[71] Docket 34 at 6.

[72] Docket 8-1 at 19.

[73] *In re Volkswagen*, 959 F.3d at 1211 (citing *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020)).

[74] *Id.*

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 15 of 34

. . . pre-emption jurisprudence."[75]  "First, 'the purpose of Congress is the ultimate touchstone in every pre-emption case.'"[76]  "Second, "[i]n all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"[77]

The Supreme Court has identified two circumstances in which "Congress's implicit intent to preempt state law clears that high threshold."[78]  The first circumstance occurs "when federal law occupies a field of regulation so comprehensively that it has left no room for supplementary state legislation."[79]  The second circumstance occurs "when a state law actually conflicts with federal law, either because compliance with both state and federal law is impossible, or because the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[80]  Here, CPAI asserts that obstacle preemption applies.

---

[75] *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

[76] *Id*. (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).

[77] *Id*. (quoting *Lohr*, 518 U.S. at 485) (alternations in original).

[78] *In re Volkswagen*, 959 F.3d at 1212.

[79] *Id*. (quoting *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018)) (internal quotations omitted).

[80] *Id*. (internal quotations and citations omitted).

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 16 of 34

Case 3:22-cv-00121-SLG   Document 35   Filed 03/08/23   Page 16 of 34

## A. Presumption Against Preemption

Preliminarily, AOGCC asserts that a presumption against preemption should apply here as the issue involves a matter of health and safety and the state's historic regulation of the development and conservation of oil and gas.[81] While courts "start with the assumption that the historic police powers of the States were not to be superseded . . . unless that was the clear and manifest purpose of Congress,"[82] that "assumption of nonpre-emption is not triggered when the State regulates in an area where there has been a history of significant federal presence."[83]

From the time that President Harding "created the National Petroleum Reserve by Executive Order in 1923" until the present, the federal government has "exercise[d] ownership and control over [oil and gas production in] the NPR-A."[84] Moreover, the federal government has enacted multiple statutes since the 1920s regulating oil and gas on federal lands and waters.[85] For the past century, there has been a clear history of significant federal presence in oil and gas matters on

---

[81] Docket 8-1 at 11.

[82] *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977).

[83] *United States v. Locke*, 529 U.S. 89, 90 (2000).

[84] Docket 11 at 17, 17 n.51 (citing *United States v. Alaska*, 521 U.S. 1, 36, 39 (1997) (discussing the federal government's involvement in the NPR-A since Alaska's statehood)).

[85] *See, e.g.*, the Mineral Leasing Act of 1920, 30 U.S.C. § 181, *et seq.*; Mineral Leasing Act for Acquired Lands of 1947, 30 U.S.C. § 351, *et seq.*; Outer Continental Shelf Lands Act of 1953, 43 U.S.C. § 1331, *et seq.*; Naval Petroleum Reserves Production Act of 1976, 42 U.S.C. § 6501, *et seq.*; Federal Onshore Oil and Gas Leasing Reform Act of 1987, 30 U.S.C. § 181, *et seq.*

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 17 of 34

federal lands, including the NPR-A. Therefore, the Court finds that the presumption against preemption is not triggered in this case.

### B. Ambiguity

The Court next turns to whether there is ambiguity in the NPRPA with respect to the preemption of the State Disclosure Laws. The definition of "ambiguous" is "capable of being understood in two or more possible senses or ways."[86] Although AOGCC maintains that there is no ambiguity in the NPRPA because "Congress's intent" was "clear" as "expressed through the language of the statute and its structure and purpose,"[87] the Court disagrees. First, as discussed *supra* in Section I, both parties seem to assume that 42 U.S.C. § 6506a(m)'s reference to subparagraph (a)(1)(A) of § 1352 means incorporation of the entire OCSLA Oil and Gas Information Program statute.[88] However, in this Court's view, this may run afoul of statutory construction, which limits incorporation by reference only to the particular part of the statute referenced.[89] These conflicting views of what exactly is incorporated into the NPRPA demonstrates ambiguity.

---

[86] *Ambiguous*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/ambiguous (last visited Mar. 2, 2023).

[87] Docket 18 at 2.

[88] Docket 12 at 29-40; Docket 8-1 at 10-15.

[89] SINGER & SINGER, *supra* note 77, at § 51:8.

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 18 of 34

Second, assuming that the express preemption clause in paragraph (g) of § 1352 is incorporated in the NPRPA Rider, AOGCC acknowledges some ambiguity there. Counsel for AOGCC stated at oral argument that the "subchapter" referenced in paragraph (g)'s clause "pursuant to this subchapter" may refer to both the OCSLA and the NPRPA "as it utilizes the information program, . . . but another interpretation could be that it . . . refers to the [OCSLA] and Congress never intended those sections to apply to the NPRPA."[90] The Court also finds ambiguous whether paragraph (g) applies only to Well Data information submitted directly to the federal government "pursuant to" the Oil and Gas Information Program, or more broadly to exploration information about wells drilled on the NPR-A, even if that information was submitted directly to the state.

Third, the Court finds the phrase "the conditions of" in 42 U.S.C. § 6506a(m) ambiguous. Rather than writing, "Any information acquired in such explorations shall be subject to 43 U.S.C. 1352(a)(1)(A)," Congress wrote, "Any information acquired in such explorations shall be subject to *the conditions of* 43 U.S.C. 1352(a)(1)(A)."[91] Courts construe a statute to give effect "to all [its] provisions, so that no part will be inoperative or superfluous, void or insignificant."[92] Because

---

[90] Docket 34 at 8.

[91] 42 U.S.C. § 6506a(m) (emphasis added).

[92] *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)); *see also* 2A NORMAN J. SINGER & SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § 46:6 (7th ed. 2014).

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 19 of 34

Congress added the phrase "the conditions of," the question becomes: what conditions, beyond what is already included in 43 U.S.C. § 1352(a)(1)(A), did Congress mean?

For the foregoing reasons, the Court finds that the federal law is ambiguous as to whether Congress intended to preempt the State Disclosure Laws regarding the public disclosure of Well Data from the NPR-A.

### C. NPRPA Rider Purpose and Legislative History

When "language is ambiguous or is capable of more than one reasonable interpretation, [courts] 'consult the legislative history, to the extent that it is of value, to aid in [their] interpretation.'"[93]  Courts also look to a "statute's 'purpose'" to guide their analysis.[94]  When Congress first enacted the NPRPA in 1976, only the federal government was permitted to explore for petroleum, and the "production of petroleum" was generally prohibited.[95]  It appears from the congressional record that there was very limited exploration activity on the NPR-A by the federal government after 1976.[96]

---

[93] *United States v. Thompson*, 728 F.3d 1011, 1015 (9th Cir. 2013) (quoting *Merkel v. Comm'r of Internal Revenue*, 192 F.3d 844, 848 (9th Cir. 1999)).

[94] *Thompson*, 728 F.3d at 1015 (citing *Jonah R. v. Carmona*, 446 F.3d 1000, 1005, 1010-11 (9th Cir. 2006)).

[95] Pub. L. No. 94-258, § 104(c), 90 Stat. 303 (1976) (directing the Secretary of the Navy and the Secretary of the Interior, upon transfer of management authority, to "continue the ongoing petroleum exploration program"); *see also id.* § 104(a), (e) (prohibiting production except to provide gas to the Village of Barrow, other communities, and agencies of the federal government).

[96] *See* 126 CONG. REC. 20489-90 (1980).

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 20 of 34

Case 3:22-cv-00121-SLG   Document 35   Filed 03/08/23   Page 20 of 34

In 1979, the Nation experienced its second energy crisis of that decade with "oil prices beg[inning] to rise rapidly in mid-1979, more than doubling between April 1979 and April 1980."[97]  In late 1980, Congress noted the inadequacy of the government's exploration efforts to date and debated whether to open the NPR-A to private oil and gas leasing and development.[98]  In December 1980, Congress added the Rider to the Department of Interior appropriations bill, authorizing the "expeditious program of competitive [private] leasing of oil and gas in the National Petroleum Reserve in Alaska[.]"[99]  Faced with a critical oil shortage and the federal government's limited exploratory program, it appears Congress intended to open the NPR-A to private leasing and exploration and production in order to increase domestic oil supply as expeditiously as possible.

Before enacting the Rider, Congress directed that a study be done pursuant to NPRPA Section 105(b) "to determine the best overall procedures to be used in the development, production, transportation, and distribution of petroleum

---

[97]  Laurel Graefe, *Oil Shock of 1978–79*, Federal Reserve History, available at www.federalreservehistory.org/essays/oil-shock-of-1978-79 (last visited Feb. 17, 2023).

[98]  H.R. Rep. No. 96-1147, at 32-33 (1980).  The debate was also between Congress and the Carter Administration.  The Carter Administration proposed discontinuing government exploration prior to commencing a private leasing program.  Some members of Congress, on the other hand, supported continued government drilling until a leasing program for private exploration was established.  *See id.*

[99]  Pub. L. No. 96-514, 94 Stat. 2964.  Paragraph (d) of the Rider mandated that the first lease sale "shall be conducted within twenty months of December 12, 1980."

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 21 of 34

resources in the reserve."[100]   The resulting report ("Report") was issued in December 1979.[101]   The Report highlighted "several potential approaches to exploration and development of the NPR-A" and evaluated three options: a private sector program, a public sector program, and a mixed public and private sector program.[102]   The Rider cites to the Report, and it is thus reasonable to assume Congress relied upon the Report when drafting the Rider.[103]   Because Congress ultimately created a private leasing program in the Rider, the Court examines the Report's evaluations of a private sector program to gain insight into "the purpose of Congress."[104]

As CPAI points out, the Report noted that the government's role in a private sector program "would be similar to its role in managing oil and gas operations on the OCS."[105]   The Report further compared an NPR-A private leasing program to the OCSLA oil and gas program, stating, "As on the OCS, the Government would

---

[100] Pub. L. No. 94-258, § 105(b) (codified at 42 U.S.C. § 6505(b)).

[101] OFF. OF MINS. POL'Y & RSCH. ANALYSIS, U.S. DEP'T OF THE INTERIOR, FINAL REPORT OF THE 105(B) ECONOMIC AND POLICY ANALYSIS (1979) (hereafter cited as "105(B) REPORT").

[102] Docket 12 at 5; 105(B) REPORT 6-10, 37.

[103] See 42 U.S.C. § 6506a(n)(2) (referring to "the comprehensive land-use studies carried out in response to sections 6506(b) and (c) of this title").  The Court notes that while the statute refers to "sections 6506(b) and (c)," this is an apparent typographical error, as the statute should instead refer to section "6505(b) and (c)."  Section 6506 of the NPRPA is about antitrust provisions and contains no paragraphs.  See id.; 42 U.S.C. § 6505(b) and (c); 42 U.S.C. § 6506.

[104] Wyeth, 555 U.S. at 565.

[105] Docket 12 at 5; 105(B) REPORT 37.

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 22 of 34

establish leasing schedules, terms and conditions, and enforce regulations . . . ."[106] That Congress intended the NPRPA private leasing process to replicate the OCS leasing process is reflected in § 6506a(f).[107]

Of further relevance to the congressional intent of the Rider is the section of the Report on "Information Externalities" under the private sector program.[108] "Information Externalities" is identified as a problem in the private sector program but not in the public sector program. The Report makes clear that exploration information, if it "become[s] known in the industry," or if there is an "information spillover," is "of particular value to competitors holding leases on nearby tracts or nearby areas."[109] The Reports notes that "the exploring firm is not automatically compensated for the value of benefits accruing to competitors from knowledge concerning the explorer's discoveries. . . . [T]he uncompensated information spillover may result in less exploration."[110] The Report then provides various solutions to this problem, the first being a regulation providing for the "early public release of information." However, it remarks that "a requirement to release

---

[106] 105(b) REPORT 37. The Report discusses five management approaches but uses "Approach 2, which assumes management of NPRA through traditional OCS-type leasing and development procedures," as "the reference point for th[e] study." *Id.* at 6.

[107] "Bidding systems used in lease sales shall be based on bidding systems included in section 205(a)(1)(A) through (H) of the Outer Continental Shelf Lands Act Amendments of 1978 (92 Stat. 629)." 42 U.S.C. § 6506a(f).

[108] 105(b) REPORT 38.

[109] *Id.*

[110] *Id.*

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 23 of 34

exploration information does not compensate the exploring firm for the value of information and could have serious disincentive effects."[111]   Therefore, "[t]o maintain some competitive edge" for "companies involved in exploration," the Report recommended publicly releasing the exploration information only *after* the explorer "relinquished [the leased land] to the Government."[112]

As for how long the initial leases should be, the Report recommended a term of 10 years with an option to extend "upon adequate showing of diligence and compliance with the work commitment."[113]  The Report noted that "if the lease term is too short, prospective lessees may be discouraged from acquiring leases."[114]  Congress subsequently adopted these recommendations into the NPRPA by establishing 10-year leases with extension options.[115]

---

[111] *Id.* Of note, while AOGCC contends in its briefing that keeping exploration data confidential is not an incentive to private exploration, it seemed to acknowledge during oral argument that there is some incentive.  Counsel for AOGCC stated that the Alaska disclosure laws "do[] maintain confidentiality for a set amount of time to ensure that the *incentive* to invest early is there for these operators," and that "the State will continue to hold [significant information] confidential if that land is unleased . . . [s]o these companies do have this *incentive* to invest."  Docket 34 at 3-4 (emphasis added).

[112] 105(b) REPORT 57.

[113] *Id.* at 53.

[114] *Id.*

[115] 42 U.S.C. § 6506a(i)(1) states: "Each lease shall be issued for an initial period of not more than 10 years, and shall be extended for so long thereafter as oil or gas is produced from the lease in paying quantities, oil or gas is capable of being produced in paying quantities, or drilling or reworking operations, as approved by the Secretary, are conducted on the leased land."

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 24 of 34

Additional evidence demonstrates that Congress was aware of the problem that public disclosure of exploration information would cause in a private leasing context. In testimony before Congress regarding the Rider, at least one oil and gas industry witness specifically addressed the value of exploration information, testifying that, "[T]he collection of geophysical data is competitive, as any aspect in exploring for oil. Each of us companies feel that we have an edge in some way or another in terms of collecting geophysical data."[116]

Moreover, Congress had already become aware of the need for confidentiality during hearings on the OCSLA Amendments of 1977. The Secretary of the Interior wrote to Congress, "The problems of confidentiality or full disclosure of drilling results are central to the value of any [private] exploration program. Confidentiality . . . is essential if there is to be an incentive for firms to invest their own funds in pre-lease exploration."[117] The Administrator of the Federal Energy Administration also weighed in, stating, "Disclosure of information which is of a proprietary nature may seriously jeopardize the competitive position of the participants in the OCS program, and may effect [sic] their willingness to

---

[116] *Dep't of the Interior & Related Agencies Appropriations for 1981: Hearings Before a Subcomm. of the Comm. on Appropriations*, 96th Cong. 799 (1980) (statement of W.E. Crain, Alaskan Division Manager, Exploration, Chevron, U.S.A.).

[117] *Outer Cont'l Shelf Lands Act Amends. of 1977, Part 1: Hearings Before the Ad Hoc Select Comm. on Outer Cont'l Shelf*, 95th Cong. 200 (1977) (statement of Cecil D. Andrus, Secretary of the Interior) (hereafter "OCSLA Hearings").

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 25 of 34

spend the sums necessary to obtain such information."[118]   In contrast, with a "publicly financed drilling program, . . . full disclosure is essential [because] . . . [t]he major purpose of the publicly supported program is to make information as widely available as possible so as to enhance competition for leases and government revenue."[119]

In enacting the NPRPA Rider, Congress intended to permit and incentivize private exploration of the NPR-A.[120]   Based on the testimony Congress received regarding the Rider, Congress's consideration of OCSLA when drafting the Rider, and the testimony from the OCSLA hearings, the Court finds that Congress recognized the need to keep exploration information confidential in a private leasing program such as the one authorized by the Rider.   Congress had previously demonstrated its significant interest in protecting that information when it enacted the OCSLA Oil and Gas Information Program, which directed the executive to enact regulations to "assure . . . the confidentiality of privileged or proprietary information received by the Secretary" in paragraph (c) and expressly preempted state public disclosure laws in paragraph (g).[121]

---

[118] *Id.* at 223 (statement of John F. O'Leary, Administrator, Federal Energy Administration).

[119] *Id.* at 200 (statement of Cecil D. Andrus, Secretary of the Interior).

[120] As CPAI points out, "[t]his is reflected in the NPRPA's larger lease tracts, longer lease terms, exploration incentives, and data confidentiality protections for explorers."  Docket 26 at 10; *see also* 42 U.S.C. § 6506a(h), (i), (k), (m).

[121] 43 U.S.C. § 1352.  Paragraph (c) also provides that "no such information will be transmitted to any affected State" unless the lessee or permittee consents.  *Id.* § 1352(c).

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 26 of 34

In reviewing the NPRPA and its enabling regulations, 43 C.F.R. § 3130, *et seq.*, the Court found only one provision governing the confidentiality of exploration information: paragraph (m) of the Rider, which incorporates "the conditions of 43 U.S.C. 1352(a)(1)(A)."[122]  As discussed above, 43 U.S.C. § 1352(a)(1)(A) of the OCSLA directs lessees or permittees to provide information to the Secretary of the Interior in accordance with prescribed regulations.  The regulations are found at 30 C.F.R. Part 552 and "provide[] procedures and requirements for the submission of oil and gas data and information" to the federal government.[123]  Multiple sections in 30 C.F.R. Part 552 govern when and how the exploration information provided to the government can be disclosed, and they further provide rules on maintaining confidentiality.[124]  For example, 30 C.F.R. § 552.7 directs that "[p]rior to the transmittal of any privileged or proprietary data or information to any State, . . . the State shall agree . . . to . . . [p]rotect and maintain the confidentiality of privileged or proprietary data or information in accordance with the laws and regulations listed

---

[122] 42 U.S.C. § 6501, *et seq.*; 43 C.F.R. § 3130, *et seq.*

[123] 30 C.F.R. § 552.1.

[124] *See id.* §§ 552.3-552.7.

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 27 of 34

in paragraph (a)(3) of this section."[125]  One of the laws "listed in paragraph (a)(3)" is the OCSLA, which contains the Oil and Gas Information Program.[126]

When the OCSLA Oil and Gas Information Program was created, "Congress asserted exclusive federal jurisdiction over the seabed and subsoil of the OCS."[127] Explorers submitted their OCS exploration information only to the federal government, and as both parties note, the only way states could obtain that information was through the federal government because states "did not have the jurisdiction to obtain the information themselves."[128]  "In contrast, the NPR-A is . . . subject to both federal and state jurisdiction."[129]  Given this different context, the Court must determine whether, by referencing the OCSLA Oil and Gas Information Program, Congress intended to protect only the confidentiality of Well Data that was submitted to the federal government, or whether it intended to protect the confidentiality of all well data generated by  NPR-A lease holders, including CPAI's Well Data submitted directly to the AOGCC.

---

[125] *Id.* § 552.7(a)(4)(i); *see also id.* § 552.2 ("Information, when used without a qualifying adjective, includes analyzed geological information, processed geophysical information, interpreted geological information, and interpreted geophysical information.").

[126] 30 C.F.R. § 552.2(a)(3) cites to the OCSLA as "the Act (92 Stat. 629)."

[127] Docket 22 at 19.

[128] Docket 22 at 19; Docket 26 at 9.

[129] Docket 22 at 20.

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 28 of 34

Case 3:22-cv-00121-SLG   Document 35   Filed 03/08/23   Page 28 of 34

## D. Obstacle Preemption

The Court now addresses whether Congress demonstrated an implicit intent to preempt the State Disclosure Laws when it enacted the NPRPA Rider. The Supreme Court has found obstacle preemption in two circumstances.

> First, where the federal legislation at issue involved a "uniquely federal area of regulation," the Court has inferred a congressional intent to preempt state laws "that directly interfered with the operation of the federal program." . . . Second, the Court has inferred that Congress made "a considered judgment" or "a deliberate choice" to preclude state regulation when a federal enactment clearly struck a particular balance of interests that would be disturbed or impeded by state regulation.[130]

When determining whether an act of Congress preempts state law, "[t]here is no 'rigid formula or rule.'"[131] "Rather, what constitutes 'a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.'"[132]

As discussed above, the purpose of the NPRPA Rider was to effectuate a competitive private oil and gas leasing program on the NPR-A. In enacting the Rider, Congress recognized the need to protect confidential information from public disclosure, but it also mandated disclosure of such information—with

---

[130] *In re Volkswagen*, 959 F.3d at 1212 (alteration omitted) (first quoting *Chamber of Com. v. Whiting*, 563 U.S. 582, 604 (2011); and then quoting *Arizona*, 567 U.S. at 405).

[131] *Chamber of Com. v. Bonta*, No. 20-15291, 2023 WL 2013326, at *6 (9th Cir. Feb. 15, 2023) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

[132] *Id.* (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)).

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 29 of 34

Case 3:22-cv-00121-SLG    Document 35    Filed 03/08/23    Page 29 of 34

limits—for governmental purposes.[133]   This exemplifies a "balance of interests" between incentivizing private exploration by protecting data and satisfying governmental interests such as conservation and oversight of federal lands by directing the submission of data.[134]   Indeed, testimony regarding the OCSLA Amendments of 1977 specifically pointed out this balance of interests: the Secretary of the Interior stated, "On balance, there seems to be adequate access for the use of information by parties with a legitimate need to have such knowledge, and yet sufficient controls so that the sources of such information are equitably protected and encouraged to produce and share information on the OCS."[135]

AOGCC contends that it can disclose the Well Data because it obtained that data directly from CPAI and not from the federal government.[136]   Paragraph (g) of the OCSLA Oil and Gas Information Program preempts state laws providing public access to exploration information "obtained by any person pursuant to this subchapter."[137]   AOGCC asserts that this preemption provision is "narrow" and only applies to information states obtain pursuant to the "subchapter"—that is,

---

[133] *See, e.g.*, 43 U.S.C. § 1352(a)(1)(A); 30 C.F.R. Part 552.

[134] *In re Volkswagen*, 959 F.3d at 1212.

[135] OCSLA Hearings, 95th Cong. 202-03 (statement of Cecil D. Andrus, Secretary of the Interior) (discussing the confidentiality provision in the OCSLA Oil and Gas Information Program, paragraph (c)).

[136] AOGCC makes this argument in both the express preemption and conflict preemption sections of its Motion to Dismiss Complaint.  *See* Docket 8-1 at 13-20.

[137] 43 U.S.C. § 1352(g).

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 30 of 34

through the OCSLA Oil and Gas Information Program or through the NPRPA Rider.[138]  AOGCC acknowledges that if it had obtained CPAI's Well Data from the federal government, then paragraph (g) of § 1352 would prohibit public disclosure of that Well Data on a timeline different from federal law.[139]  But AOGCC asserts that because it obtained CPAI's Well Data *not* from the federal government but "pursuant to a state's own laws regulating oil [and] gas production and conservation"[140]—that is, directly from CPAI—then paragraph (g) does not apply to restrict its dissemination of the Well Data after two years.[141]

And yet CPAI, and other private oil and gas companies, would not have any NPR-A exploration information to submit to either the federal or state government but for their leases authorized by the NPRPA.  It is not through the State of Alaska's authority that CPAI is exploring for oil and gas in the NPR-A, but through the federal government's authority.  Therefore, "[a]ny information acquired in [NPR-A] explorations"[142] exists only because of the NPRPA, and *any* such information— whether submitted directly to the federal government or directly to the state

---

[138] Docket 8-1 at 14-15.

[139] Docket 34 at 5-6.

[140] Docket 8-1 at 14.

[141] Docket 34 at 2-3; *see also* ALASKA STAT. § 31.05.035(c); ALASKA ADMIN. CODE tit. 20, § 25.537(d).

[142] 42 U.S.C. § 6506a(m).

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 31 of 34

Case 3:22-cv-00121-SLG   Document 35   Filed 03/08/23   Page 31 of 34

government—is obtained pursuant to the NPRPA and its incorporated provisions of the OCSLA Oil and Gas Information Program.[143]

If the federal confidentiality provision does not apply to the State Disclosure Laws and AOGCC were to disclose CPAI's Well Data pursuant to Alaska law well before the time allowed under federal law, Congress's "particular balance of interests . . . would be disturbed or impeded by state regulation."[144] CPAI asserts that such a disclosure would diminish "the value of the Well Data to CPAI . . . because CPAI would lose its competitive advantage as to other companies."[145] The Court finds this argument persuasive because the early disclosure of Well Data by the State of Alaska would "serve as a disincentive for CPAI to drill further wells in the NPR-A . . . [and] would inevitably create a scenario in which oil and gas exploration companies . . . 'wait out' their competitors in the hopes that some other company would conduct exploration activities that could then be exploited.

---

[143] AOGCC also contends that it would be "impractical" to keep "information a state receives directly from lessees" confidential under the OCSLA Oil and Gas Information Program because the state would not know if the information actually fell "under the Information Program's confidentiality provisions." Docket 22 at 20-21. For the same reasons set forth above, the Court rejects this argument and finds that any exploration information acquired from NPR-A leases is governed by the confidentiality restrictions of the Oil and Gas Information Program.

[144] *In re Volkswagen*, 959 F.3d at 1212; *see also Garcia*, 140 S. Ct. at 801 ("If federal law imposes restrictions or confers rights on private actors and a state law confers rights or imposes restrictions that conflict with the federal law, the federal law takes precedence and the state law is preempted." (internal quotation marks and citation omitted)).

[145] Docket 13 at 3, ¶ 4.

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 32 of 34

Because explorers would be incentivized to wait . . . , there would be less exploration of the NPR-A."[146]

Less exploration of the NPR-A is the opposite of Congress's objective in enacting the Rider, which was to promote the expeditious private exploration of this federal land. Congress recognized the need to protect the confidentiality of Well Data in order to promote that goal. It would make no sense for Congress to prohibit the federal government from publicly disclosing Well Data for the duration of an NPR-A lease but permit a state to disclose such information prior to the end of the lease. Allowing the State of Alaska to disclose CPAI's Well Data after just two years would clearly impede Congress's intent to expeditiously advance private oil and gas development on the NPR-A. The Court thus finds that the State Disclosure Laws "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" and are preempted by the OCSLA Oil and Gas Information Program as incorporated into the NPRPA Rider.[147]

## III. Rule 56(d) Continuance

AOGCC, in its opposition to CPAI's Motion for Partial Summary Judgment, requested a Rule 56(d) continuance to conduct discovery on additional facts.[148]

---

[146] Docket 13 at 4, ¶ 6.

[147] *Google L.L.C.*, 56 F.4th at 741.

[148] Docket 22 at 34-35. AOGCC asserts that it needs the business records Mr. John Schell relied on to make his declaration and the Well Data CPAI provided to BLM to verify if CPAI provided any of the same Well Data to AOGCC. Docket 22 at 34-35; *see also* Docket 13. However, AOGCC does not explain how "the sought-after facts are essential to oppose summary judgment." *Fam.*

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 33 of 34

Case 3:22-cv-00121-SLG   Document 35   Filed 03/08/23   Page 33 of 34

And yet, AOGCC acknowledges in its Motion to Dismiss Complaint that the preemption issue "sets forth a pure question of law."[149] "Preemption is almost always a legal question, the resolution of which is rarely aided 'by development of a more complete factual record.'"[150] The Court finds that the preemption issue in this case is a pure question of law that requires no additional factfinding to determine. The Court therefore denies the requested continuance.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Defendant's Motion to Dismiss Complaint at Docket 8 is DENIED; that Defendant's request for a Rule 56(d) continuance is DENIED; and that Plaintiff's Motion for Partial Summary Judgment at Docket 12 is GRANTED. The State Disclosure Laws that would permit the public disclosure of CPAI's Well Data sooner than is permitted by federal law are preempted.

DATED this 8th day of March, 2023, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

*Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

[149] Docket 8-1 at 9.

[150] *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 761-62 (9th Cir. 2014) (quoting *Hotel Emps. & Rest. Emps. Int'l Union v. Nev. Gaming Comm'n*, 984 F.2d 1507, 1513 (9th Cir. 1993)).

Case No. 3:22-cv-00121-SLG, *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*
Order re Motion to Dismiss Complaint and Motion for Partial Summary Judgment
Page 34 of 34